A. M. DAVIS, Admr., *v.* FRANK S. HEARD.

1. VENDOR AND VENDEE—FRAUDULENT · MISREPRESENTATIONS—RESCISSION.—H. being a non-resident of this state, purchased lands of N., in Carroll county, for $13,400, and gave his three promissory notes, one for $6,700, due 1st February

1860, the others for $3,350 each, payable on the 15th January, 1861, and 15th January, 1862; the first note was paid at maturity. H. being at the time unacquainted with the lands, relied upon the representations of N. as to the title and boundaries thereof; and which he afterwards learned were fraudulent and untrue; the lines shown to him by N. comprehending valuable lands which did not belong to the tract, and were not within the true boundaries of the land purchased. N. further represented that certain rich bottom land, well timbered, belonged to the tract, but which was not true. It further appeared that the tract, after deducting the cleared and wood land to which H. got no title, the balance was worth not more than $7,000. *Held:* That H. was entitled to a decree rescinding the contract of sale, and ordering that the two notes for the unpaid purchase money be given up to be canceled; also, to recover the amount of the purchase money paid, interest, etc., with 6 per cent. interest on the whole amount from date of decree; that the same be a lien upon said land; and to have an injunction restraining said N. from selling said lands until said decree be satisfied.

2. SAME.—The rule is well settled that if a vendor misrepresents a material fact in relation to title or quantity of an estate, though innocently and under a belief of its truth, or if he conceals any material circumstance, concealment of which would likely enhance the value of the property in the estimation of the purchaser, or if the contract is entire, and the portion lost is essential to the perfect enjoyment of the remainder in the manner intended, the contract should be rescinded.

3. VENDOR AND VENDEE—DEFECT IN QUANTITY OF CONSIDERATION.—If, in the view of the court, the defect in the thing sold, or the variation from the description, be unessential, the contract may yet be performed, but with compensation to the vendee; but, if it be essential, it confers on the party injured the right of rescinding the contract. It is not the quantity lost so much as its importance to the whole contract that is to be considered. Parham v. Randolph, 4 How., 435–451.

4. FRAUD—SUGGESTIO FALSI—SUPPRESSIO VERI.—Fraud vitiates every contract into which it enters, and a vendor who makes statements which he knows to be untrue, is guilty of a direct fraud on a vendee who is thereby deceived to his prejudice; and if he makes statements without knowing whether they are true or false, he is guilty of a fraud in law, and must make his statements good. Hall v. Thompson, 1 S. & M., 485. And whether the party making a representation of a material fact, knew it to be false, or made it without knowing it to be true or false, it is wholly immaterial; the affirmation of what is not known to be true, being equally unjustifiable as the affirmation of a positive known falsehood; and even the innocent misrepresentation of a material fact, is equally conclusive, for it is a surprise and imposition upon the other party.

5. RESCISSION OF CONTRACT—VENDEE'S LIEN FOR PURCHASE MONEY PAID.—When the vendee has paid the purchase money upon a contract for the purchase of land which has been rescinded on account of the default of the vendor, he has an equitable lien on the land for the reimbursement of the money paid upon it, similar to that of the vendor for unpaid purchase money. 2 Washburn on Real Property, 93; 1 Bibb, 313; 7 Black, 452; 16 Wise, 274; 1 Harrington (Mich.) Ch. Rep., 414.

Appeal from the chancery court of Carroll county. COTHRAN, J.

The opinion of the court contains a full statement of all the material facts of the case.

*Johnson & Nelson,* for appellant.

1st. The proof does not show that character of fraud which entitled the complainant below to a rescission of the contract.

A mere representation honestly made, and believed at the time to be true by the party making it, though not true in fact, does not amount to fraud. Adams' Equity, 178, and authorities there cited.

2d. "It is usually necessary for a party who wishes to rescind a contract, to make his application as soon as he discovers the ground of rescission." "By subsequent acts he may waive his right to have the contract set aside." Ayres v. Mitchell, 3 S. & M., 683. See also, Moss v. Davidson, 1 S. & M., 112; Fletcher v. Wilson, S. & M. Ch. Rep., 376.

It is insisted that if Heard ever had any right to rescind, he waived it by his subsequent acts; and, after the lapse of years, since his whole case must have been fully known to him, he will not now be permitted to claim a rescission. If the decree rescinding the contract should be sustained, Mr. Heard comes in as a general creditor of the estate for the purchase money which he had paid. And this gives rise to the third proposition, that the vendee has no lien on the land for the purchase money paid, where the contract has been rescinded for fraud. Sugden on Vendors 136; Hilliard on Vendors, 427. See Conner v. Banks, 48 Ala., 42. Read v. Walker, 18 Ala., 323.

It will be observed that no decree of the court was rendered declaring the existence of a lien on the land for the purchase money.

*J. Z. George,* for appellee.

1st. When the vendee relies upon the representations of the vendor the former is bound to make good his representations as to any material fact. Hall v. Thompson, 1 S. & M. It is not the quantity lost, but the materiality of it to the perfect enjoyment of the remainder in the manner intended by the parties. Parham v. Randolph, 4 How., 435–453. And if there be fraud, the purchaser can rescind. Any inten-

tional misrepresentation is fraud; and it is immaterial whether the misrepresentations were intended or not. If the vendor undertakes to make statements he is bound by them. Ib., 451, citing 2 Story's Equity, 193; McFerrin v. Taylor, 3 Cranch, 270; 1 Cond. U. S. R., 530, where C. J. Marshall says: "He who sells property on a description given by himself, is bound to make good that description," and if it be untrue in a material part, "although the variance be occasioned by mistake, he is still liable." 1 Cond. U. S. R., 530; 3 Cranch, 270; 1 Story's Equity, § 193.

And even if the party innocently misrepresents a material fact by mistake, it is equally conclusive. It is no answer to a charge of concealing an incumbrance, that it had escaped the memory of the vendor. It is nevertheless a fraud, which vitiates the contract. The law regards it as intentional, and it is the duty of the vendor to make the statement, and to conceal no material fact connected with the title. Davidson v. Moss, 5 How., 676, 682–3. "If without knowing whether his representation was true or not, he took upon himself to make it to complainant (vendee), and upon the faith of it complainant acted, he is not less bound, although he may have only been mistaken and comparatively innocent." Rimer v. Dugan, 39 Miss., 483, citing 2 Tuck. Com., 421, *et seq.*; 6 Ves., 174–183; 10 ib., 475; Vest B., 355; 1 Brown Ch. Rep., 546; 9 Ves., 21; 1 Studly, § 193; 3 Cranch, 270; Read v. Walker, 18 Ala., 323. This doctrine has been settled in this court. Hull v. Thompson, 1 S. & M., 485; Clopton v. Cogast, 13 S. & M., 363; Oswald v. McGehee, 28 Miss. R., 340; Lindsey v. Lindsey, 34 ib., 432. See Burnett v. Judson, 21 N. Y., 238; Craig v. Ward, 36 Barb., 377; Shackelford v. Hanley, 1 A. K. Marsh., 500. See also Lamar v. Hill, 15 Ala., 557, where it is also held that when the charge is fraud, proof of mistake will do. See particularly Smith v. Richard, 13 Peters, 26, 36, *et seq.*

2d. The opportunity of vendee to examine. It is not the mere opportunity to examine which relieves the other party from the duty to disclose, for then the opportunity exists.

Yet if the vendee reposes confidence in the vendor, and does not examine for himself, then the duty to disclose defects is equally obligatory, and the vendor will be held bound for all statements and undue concealments. Hull v. Thompson, 1 S. & M, 482–3. He is bound to disclose truly unless common observation would furnish the information. 1 Cook (Tenn.), 417.

The rule is "that although the purchaser may, by close inspection, discover vice in the thing sold, yet if the vendor makes representations upon which he relies, and which prevents him from making a proper representation, and which proves to be unsound, it is good grounds to avoid the contract. In the absence of all representations of the vendor, the purchaser is held to strict diligence in examining and judging for himself, but when representations are made as to doubtful matters material to the transaction, the purchaser may protect himself by relying upon the good faith of the vendor, and on breach of that will not be bound by the contract." Oswald v. McGehee, 28 Miss., 353–4.

If the adverse title be on record, this does not excuse the vendor from making a false statement in reference to it. Parham v. Randolph, 4 How., 451.

Peyton, C. J.:

In September, 1860, Frank S. Heard filed his bill in the chancery court of Carroll county against Josiah Newman, that on the 29th day of October, 1859, he purchased certain lands in Carroll county, as described in the bill, from Josiah Newman, for which he executed to said Newman three promissory notes, one for the sum of $6,700, due the 1st day February, 1860, and two for $3,350 each, the one payable on the 15th day of January, 1861, and the other on the 15th day of January, 1862. That, being at the time of the purchase, a non-resident of this state and unacquainted with the lands purchased, complainant relied upon the representations of said Newman as to the titles and boundaries of said lands, which he has subsequently ascertained to be fraudulent and

untrue, by which he has sustained damage, and having paid the first of the above mentioned notes, and fearing, from the pecuniary circumstances of said Newman, that he would not be able to respond to complainant for the damage which he has sustained in consequence of the fraudulent representations aforesaid, he prays for an injunction restraining the transfer and collection of the remaining notes given for said lands, and for compensation for the damage sustained.

In December, 1860, Newman answered the bill, denying all fraud and misrepresentation as charged in the bill, and offered to rescind the contract of sale, and after filing his answer, departed this life; and on the 19th day of March, 1866, the suit was revived against A. M. Davis, the personal representative of the deceased Newman.

On the 9th day of April, 1866, A. M. Davis answers, and says that he knows nothing of his own knowledge of the matters alleged and charged in the bill of complaint, and in consequence of the changed condition of things he recedes from the proposition to rescind the contract made by his testator. He makes his answer a cross-bill, and prays that an account be taken of the amount due upon the lands and that the said lands, or so much thereof as may be necessary, may be decreed to be sold for the payment of the same.

On the 24th day of April, 1866, complainant filed a supplemental bill, which alleges that since the filing of the original bill the complainant has discovered other frauds of said Newman in the sale of said lands, and that a title to part of which has wholly failed; that he did not discover the additional misrepresentations of said Newman as to the northern and western boundary of said tract until after the original bill was filed, and till within the last two years; that he acceded to Newman's offer to rescind as soon as he knew of the same, and so informed the personal representative of said Newman; that owing to the fact that the counsel on both sides were in the military service during the civil war, and that the courts were virtually closed during that period, he did not know of the offer to rescind until his counsel

returned home and began to make preparations for the prosecution of this suit, when he first discovered the fact of the offer of Newman to rescind, which he then and there through his counsel proposed to accept. The bill prays for a rescission of the contract of sale; that the unpaid notes be delivered up to the complainant, and that an account be taken and stated of the amount of principal and interest paid for said lands, and that the same may be declared a lien on said land, and that the land, or so much thereof as may be necessary, may be decreed to be sold for the payment of the amount of money found due the complainant.

On the 18th day of April, 1868, A. M. Davis answers the supplemental bill and says that he has no knowledge or information, except the statements in the original and supplemental bills, relative to said Newman's representations in regard to the boundaries of said lands, and denies that any false or fraudulent representations were made by Newman with reference to the boundary of said land. He knows nothing of his own knowledge of the matters alleged and charged in the bill, and calls for strict proof.

W. S. Heard in his testimony states that at the time of the purchase the complainant resided in the State of Georgia, and could not have any knowledge of said lands, and from the favorable representations that were made to him of the character of Newman for fair dealing, honesty, and integrity, he gave up the idea which he had formed of having the land surveyed, and relied upon the statements and representations of Newman, as to the boundaries of the land, and that the lines shown him by Newman comprehended valuable lands which did not belong to the tract, and were not in the true boundaries of the land purchased, as was ascertained by a subsequent survey of the tracts. And he further states, that Newman represented to complainant that certain rich bottom land, well timbered, belonged to the tract, which did not, in fact, constitute any part of it:

J. H. Downer, in his testimony, states, that he knew the lands sold by Newman to complainant, having resided thereon

during the year 1860, and after deducting the cleared and wood land to which the complainant got no title, he estimates the remainder to be worth not more than seven thousand dollars, and that he did not believe that any man with complainant's force, would have had it at any price, for the purpose of settlement.

Upon a final hearing of the cause, on the 26th day of April, 1868, the court decreed a rescission of the contract, that the notes given for the same remaining unpaid be delivered up to complainant and canceled, and that the complainant recover of the said A. M. Davis, executor of the will of the said Josiah Newman, the sum of $10,000, with 6 per cent. interest from the date of the decree, and that the same be a lien on all said lands, except the said east half of the southwest quarter of section eighteen, which was sold by Newman to G. G. Gordin, and the said east half of the south-west quarter of section thirteen, to which Newman had no title; and that, unless the said A. M. Davis pay to the complainant the said sum of money, interest and costs, within thirty days from the date of the decree, the said lands, or so much thereof as may be necessary, be sold at public auction, for the payment of the said debt, interest and costs; and that the cross-bill of the said Davis be dismissed at his cost. And from this decree, the cause is brought to this court by appeal.

The main questions presented by this record, for our decision, are: 1st. Do the facts of this case justify a rescission of the contract, upon the application of the vendee; and if so, 2d. Has he a lien on the land for the purchase money advanced thereon?

With regard to the first question, it is believed that the principles of law, applicable to the facts of this case, are well established. The rule of law is, that if a vendor misrepresents a material fact, in relation to title or quantity of an estate, though innocently and under a belief of its truth, or if he conceals any material circumstances which may be calculated to enhance the value of the property in the estimation of the purchaser, a court of equity will rescind the con-

tract. If the vendor undertakes to make statements in a matter material to the contract, he is responsible for them. If the contract is entire, and the portion lost is essential to the perfect enjoyment of the remainder, in the manner intended, then the contract should be rescinded. The effect on the specific performance of the contract, of a defect in the thing sold, or a variation from the description, is twofold, according to its magnitude. If, in the view of the court, it be unessential, the contract may yet be performed, but with compensation; if it be essential, it confers on the party injured the right of rescinding the contract and defeating its performance. It is not the quantity lost, so much as its importance on the whole contract, that is to be considered. Parham v. Randolph, 4 How., 435–451.

Fraud vitiates everything into which it enters, and the vendor who makes statements which he knows to be untrue, is guilty of a direct fraud, if the vendee is thereby deceived to his prejudice. And if he undertakes to make statements without knowing whether they are true or false, this is also a fraud in law, and he must make those statements good. Hall v. Thompson, 1 S. & M., 485.

Whether the party misrepresenting a material fact knew it to be false, or made the representation without knowing whether it was true or false, is wholly immaterial, for the affirmation of what one does not know or believe to be true, is equally, in morals and law, as unjustifiable as the affirmation of what is known to be positively false. And even if the party innocently misrepresents a material fact, by mistake, it is equally conclusive, for it operates as a surprise and imposition on the other party. 1 Story's Eq., 225, § 193; Smith v. Richards, 13 Peters, 36; Read v. Walker, 18 Ala., 332, and Shaeffer v. Sleade, 7 Blackf., 178; Bennett v. Judson, 21 New York, 238, and Shackelford v. Handley's executors, 1 A. K. Marshall, 370; Oswald v. McGehee, 28 Miss., 340, and Rimer v. Dugan, 39 Miss., 483.

Upon a review of the authorities upon this subject, the doctrine seems to be well established that, when a party to

a contract places a known trust and confidence in the other party, and acts upon his representation, any misrepresentation by the party confided in, in a material matter constituting an inducement or motive to the act of the other party, and by which an undue advantage is taken of him, is regarded as a fraud against which equity will relieve.

The evidence sufficiently shows that the purchase in this case was made by the appellee upon the faith of the truth of the representations of the vendor, and not upon his own judgment. And, if these representations were material, and were made either with or without an actual fraudulent intent, and really did mislead the purchaser and induce him to make the bargain, relying upon them, the contract cannot stand, in case the appellee has made his application to rescind the same, within a reasonable time after the discovery of the facts that would warrant a rescission.

The testimony of W. S. Heard, shows, that, at the time of the purchase, the appellee was a resident of the state of Georgia, had no knowledge of the land, and from the favorable representations that were made to him, of the character of Newman for fair dealing, honesty, and integrity, he gave up the idea which he had formed of having the land surveyed, and relied upon the statements and representations of Newman as to titles and boundaries of the land, and that the lines shown him by Newman comprehended valuable lands which did not belong to the tract, and was not within the true boundaries of the land purchased, as was ascertained by a subsequent survey of the tract. And that Newman represented to the appellee, that certain rich bottom land, well timbered, belonged to the tract, which did not, in fact, constitute any part of it.

The testimony of J. H. Downer shows that the misrepresentations of Newman were material, and must have influenced the appellee in the purchase, for, after deducting the cleared and wood land, to which the appellee got no title, he estimates the remainder to be worth not more than seven thousand dollars, which was about half of the price of the

lands purchased.    It thus appears that a valuable portion of
the land that was represented as part of the tract sold, and
which was an inducement to the purchaser, did not belong to
it, the loss of which diminished the value of the land about
one-half.    This was a fraud upon the purchaser, which entitled
him to relief in equity.

It is insisted by the counsel for the appellant, that the
application for a recission of the contract comes too late.  The
general rule is, that the party seeking the recission of the con-
tract, must make his application therefor within a reasonable
time after he came to a knowledge of the facts which would
authorize it.

The appellee in his supplemental bill states that he did
not discover the additional misrepresentations of Newman
as to the northern and western boundary of said tract, until
after the original bill was filed, and till within the last two
years.    That he acceded to Newman's proposition to rescind
as soon as he knew of it, and so informed his personal repre-
sentative.    That owing to the fact that the counsel on both
sides were in the military service during the civil war, and
that the courts of the country were virtually closed during
that period, he did not know of the offer to rescind made by
Newman, in his answer, until his counsel returned home and
began to make preparations for the prosecution of the suit.
And Newman's answer may not have been put among the
papers in the cause for a considerable time after the same
was prepared, as there is no evidence in the record of its
having been filed until December, 1868.    Taking into con-
sideration the disturbed condition of the country, growing
out of the sanguinary and disastrous civil war, and the late
period at which the extent of the injury resulting from the
misrepresentations of Newman, was fully known by the ap-
pellee, we think that he is entitled to a rescission of the
contract.

The next question for our solution is that which involves
the consideration of the vendee's lien.    And it may be re-
marked that the natural equity and intrinsic justice of this

lièn commend it to the favorable consideration of a court of chancery. Where the vendee has paid money upon a contract for the purchase of land, which has been rescinded on account of the default of the vendor, he has an equitable lien on the land for the reimbursement of the money advanced upon it, similar to that of the vendor for unpaid purchase money. 2 Washburn on Real Property, 93 ; Bibb v. Prather, 1 Bibb, 313 ; Shirley v. Shirley, 7 Blackf., 452 ; Taft v. Kissel, 16 Wis., 274 ; Bayne v. Atturbury, 1 Harrington (Mich.) Ch. Rep., 414.

Upon the whole, we think there is no error in the decree of the court below. The decree must, therefore, be affirmed, and the caues remanded for further proceedings in the execution of the decree.