NATIONAL INDEMNITY COMPANY,
Appellant,

v.

Richard M. BANKS and Iona Coleman
Banks, Appellees.

No. 23696.

United States Court of Appeals
Fifth Circuit.

April 27, 1967.

W. F. Goodman, Jr., Elizabeth W. Grayson, Jackson, Miss., J. D. Thames, Vicksburg, Miss., for appellant.

Landman Teller, of Teller, Biedenharn & Rogers, Vicksburg, Miss., for appellees, Richard M. Banks and Iona Coleman Banks.

Before RIVES, COLEMAN, and GODBOLD, Circuit Judges.

COLEMAN, Circuit Judge.

As to these appellees this is the second appearance of this case in this Court, cf. Peerless Insurance Company v. Bailey Mortgage Company, 345 F.2d 14 (1965). On the former appeal a judgment in favor of Mr. and Mrs. Banks in the sum of $10,600 was remanded "to determine the value, if any, of the insurable interest of the Banks and to limit any judgment against National to an amount not to exceed the value of such insurable interest". Upon remand, after full evidentiary hearing, the District Court entered judgment for appellees in the sum of $6,700. We affirm.

While the Court offered the observation that the Banks' possession of the property "was apparently only that of tenants at sufferance" it had previously stated, 345 F.2d 17, "The District Court found that they had an equitable interest in and legal possession of the property, and held that this was an insurable interest upon which the National Indemnity Company policy could stand. No effort was made to value this equita-

ble interest. Assuming without deciding that it had some value, it is clear that the court committed error in failing to relate the amount of award in favor of the Banks to the value of their insurable interest".

The finding that appellees had an equitable interest was not disturbed. The District Court was accordingly directed to determine the value of the interest and this necessarily required first a finding as to the exact nature of that interest. Otherwise there could be no basis for value.

Without using the same punctuational structure, we here quote from the prior opinion as to the pertinent facts.

"Mrs. Laughlin was a house builder. She contracted to build a house for Mr. and Mrs. Banks on a lot owned by Mr. Lum. The contract price including the lot was $15,000. Mrs. Laughlin was to purchase the lot from Mr. Lum for $3,500 and a deed to the lot was placed in escrow pending the purchase. Mr. and Mrs. Banks conveyed the equity in the home in which they were then residing to Mrs. Laughlin on the purchase price of the new home, and received a credit of $6,700 therefor.

The house was completed in November, 1962, and the Banks occupied the house in anticipation of the purchase. Under the purchase contract the Banks owed a balance of $8,300 and they had arranged for a mortgage in this amount from Bailey. However, when the closing day came, it developed that Mrs. Laughlin was unable to convey clear title. In addition to the construction loan due Bailey in the amount of $11,400, the sum of $3,500 was still due for the lot. This meant that Mrs. Laughlin had to ante up $6,600 which she was unable to do because of being insolvent. She was later adjudicated a bankrupt. The Banks continued to live in the house for several months in the expectation of completing the purchase. At about the time of the abortive closing, Mr. and Mrs. Banks took out an owner's fire insurance policy with National Indemnity Company in the amount of $12,000.

The Banks were residing in the home when the fire damage occurred on April 7, 1963. It was stipulated that the amount of damage was $10,600."

The hearing on remand, before the District Judge, took place on February 1, 1966. After the hearing, the Court made the following additional findings of fact:

"In July, 1962, Banks and his wife conveyed their home property to Louise Laughlin as a part of the down payment for a conveyance to the subject property for an agreed credit of sixty-seven hundred dollars. The Banks moved into this property as their home on November 29, 1962. At that time, a deed from Lum as owner of the legal title to the lots on which the property was constructed reposed in escrow subject to the payment of thirty-five hundred dollars due him on the purchase price by Mrs. Laughlin. Mrs. Laughlin was adjudicated a bankrupt and became financially unable to meet her obligations and commitments, resulting in the Banks losing their investment in this subject property.

The Banks were thus vendees in possession under a written contract of purchase and sale covering the subject property at the time of this loss.

The undisputed credible evidence in this case shows and the Court finds that the Banks on the date of this fire had an insurable, equitable title to and possession of this property of the reasonable value of sixty-seven hundred dollars."

Judgment was entered accordingly.

■ At least since 1870, Davis v. Heard, 44 Miss. 50, it has been the law of Mississippi that a *vendee* upon default by the *vendor* has an equitable lien on the land for the reimbursement of money advanced upon it, similar to that of the vendor for unpaid purchase money.

This rule was strongly reaffirmed in Cole v. Haynes, 216 Miss. 485, 62 So.2d 779, 33 A.L.R.2d 1378 (1953). In that case, Haynes agreed to sell Cole a farm

and certain personal property for a stated consideration of $10,000. Cole was to pay that amount on or before a certain date, at which time Haynes would execute and deliver a general warranty deed to the property in fee simple. Cole paid Haynes $3,250 contemporaneously with the execution of the contract. It was agreed that if Haynes could not convey a fee simple title then the contract would be void and the money would be returned. Haynes could not clear the title within the prescribed time. He refused to repay Cole the $3,250. The Supreme Court of Mississippi, citing Davis v. Heard, supra, held that the agreement constituted an executory contract binding on both parties for the sale of the land, that Haynes was obligated to repay the money he had received and which it was alleged he had spent on other debts, and that Cole was entitled to an equitable lien upon the land for the amount which he had paid upon the purchase price. Cole had never gone into possession. The Banks were in possession.

Able counsel for the appellant vigorously urges, however, that the deed in escrow from the Lums was not to the Banks but to Mrs. Laughlin, that the Lums could have recalled the deed at any time because no consideration had been passed. It would seem that the answer to this contention is to be found in the fact that Mrs. Laughlin built a house on this property and the Banks had occupied it from November, 1962, until April 7, 1963. There had been no objection on the part of the Lums, nor had they made any effort to recall their deed from escrow. Under such circumstances it is to be presumed that the Lums acquiesced in the situation, for possession of land is notice to the world of the possessor's rights therein. Bolton v. Roebuck, 77 Miss. 710, 27 So. 630 (1900); Kalmia Realty & Insurance Co. v. Hardy, 164 Miss. 313, 145 So. 506 (1933).

It is true that Bailey Mortgage Company, an original party to this litigation whose rights against another insurance company were decided in our former opinion, held a recorded mortgage against the property here involved. At the second hearing, however, the undisputed testimony was that Bailey had actual notice of the $6,700 payment made by the Banks. A vendee's lien will prevail against the lien of a subsequent mortgagee with knowledge of the outstanding contract of the vendee, cf. 33 A.L.R.2d, 1384, 1406, and cases there collated.

The judgment of the District Court must be and is

Affirmed.