Ross et al. *v.* Houston et al.

there was not a legal grand jury. in point of numbers, is untenable; because no objection was made to the grand jury in the court below, and it is too late after a party pleads not guilty and goes to trial on the merits, to object here; and because the statement in the record, that the grand jury found the bill, concludes the party because there could be no grand jury, unless there was the legal number requisite to such a body. *Brantley* v. *State*, 13 S. & M. 468; *Dyson* v. *State*, MS.

Mr. Justice YERGER delivered the opinion of the court.

The judgment in this case must be reversed. It does not appear by the record, that the grand jury were sworn. It has been repeatedly held, that this is a fatal defect. There is a recital in the indictment, that the grand jury "were duly elected, impanelled, and sworn." But the court, in the case of *Cody* v. *The State*, 3 How. R. 29, say: " The recital of this fact, in the bill of indictment, cannot supply the omission of it in the record. The record may aid the indictment, but not *e converso*. For the authority of the jury to find the indictment must be contained in the record, and the bill becomes no part of the record until it is acted upon and returned into court, in the manner prescribed by law.

Let the judgment be reversed, and the cause remanded.

---

Ross and WAITE, Executors, *vs.* HOUSTON. and CANNON.

As a general rule, where a party purchases property through an agent, notice communicated to the agent of the rights of third parties to the property will be held in any controversy with such third parties in relation to it, as equivalent to direct notice to the principal. *Semble*, as to any defects in the title or quality of property purchased by an agent, in any controversy between the principal and vendor in relation to the property.

Where an agent is employed to sell property, and notice be given him of such

defects in the title or quality of the estate, which, if known to the principal, it would have been his duty to disclose them to the purchaser, or, in failure to do so, the purchaser might be relieved from the contract; *held*, that the purchaser can obtain the same relief, although the principal was ignorant of the defects in the property when the agent made the sale.

Notice to the agent is notice to the principal; as far as the rule has been established, it is sound policy; but if at the time A. sold the land to H. he (A.) was ignorant of the fact that he had acquired no title to the land by his purchase under execution sale, then notice of these facts given to the agent (W.) will not affect A.'s conscience with implied notice in the subsequent sale by him, and entitle the purchaser to insist upon an avoidance of his contract.

In error from the circuit court of Marshall county; Hon. Hugh R. Miller, judge.

In January, 1852, Ross and Waite, as executors of the last will and testament of James C. Alderson, deceased, instituted a suit in the circuit court of Marshall county against Houston and Cannon as the makers of two writings obligatory, for $400 each, dated December 8th, 1849, and made payable to Alderson at one and two years after date.

Houston and Cannon alleged in their answer to the complaint, that in December, 1849, Alderson, the plaintiffs' testator offered to sell to the defendant Houston section 24, township 2, range 4 west, lying in Marshall county, of which he claimed to be the owner, and which he said he had purchased under an execution in favor of the officers of the circuit court of Marshall county against Nathaniel Anderson; that Alderson then proposed to convey the land to Houston, by a deed with general warranty for $1,500, or by a quitclaim deed for $1,000, representing at the same time that his title to the land was good and valid in law, and that his purchase of it had been fairly made in all things; that Houston thereupon, confiding in the representations of Alderson as to the validity of his title to the land, and doubting the responsibility of Alderson upon a warranty, agreed to take Alderson's quitclaim deed and pay $1,000 for the land; and did receive such a deed from Alderson, and paid him $200 of the purchase-money, and executed his two writings obligatory to Alderson, with the defendant Cannon as his security, for $400 each, for the unpaid residue of the purchase-money, which are the two writings

Ross et al. *v.* Houston et al.

obligatory sued on in this cause; and that this purchase was made by Houston without any knowledge on his part of the fact that Alderson's title to the land was affected by notice to ·Alderson, or his agent, at the time of Alderson's purchase of the land under execution; that Anderson, the defendant in the execution, was not at that time the owner of the land.

The answer further alleged, that Alderson, when he purchased the land at sheriff's sale as the property of Anderson, was not a *bonâ fide* purchaser of the land; that his purchase was, in fact and in law, invalid and void, because, at the time of that purchase, Anderson, the defendant in ‹the execution under‹ which the land was sold, had conveyed the land to Hopkins, Fearn, and Carr, for a valuable consideration, by a deed which had not been recorded in Marshall county, so that he was no longer the owner of the land, and had no title thereto; that George West was the agent of Alderson in purchasing the land at execution sale, and had notice, as such agent, before he purchased the land for Alderson, of the fact that Anderson was not the owner of the land; wherefore Alderson had notice, and acquired no title to the land by virtue of his purchase, but the sheriff's sale and deed to Alderson were fraudulent in law and void, and the plaintiffs have no cause of action in the premises against the defendants.

The plaintiffs' replication to the defendants' answer, admits that Alderson, in December, 1849, did claim to be the owner of section 24, under a purchase at sheriff's sale under executions in favor of the officers of court against Nathaniel Anderson, and offered to sell the same to the defendant Houston, and gave Houston his choice, either to take a deed for the land with general warranty at $1,500, or a mere quitclaim deed at $1,000; denies that Alderson represented to Houston that his title to the land was absolutely good and valid in law, or that his purchase of it had been fairly made in all things; and alleges that Alderson merely represented, that he knew of no defect in his title to said land, and requested Houston to have the title investigated for himself.

Denies, further, that Houston made the purchase of the land, confiding in ‾any representations made to him by Alderson in

50 *

regard to the title, and avers that he made the purchase, confiding solely in the correctness of the opinion expressed to him by H. W. Walter, Esq., who was employed by him to investigate the title; that Alderson's title to the land was good and valid; and that Houston agreed to take, and did take, a quitclaim deed to the land from Alderson, not because he doubted the responsibility of Alderson upon his warranty, but because he preferred to take the land at $1,000, and risk the validity of Alderson's title, rather than to pay $1,500 for a deed with general warranty.

Admits that Houston purchased the land from Alderson for $1,000, took a quitclaim deed thereto, paid $200 of the purchase-money in cash, and executed, with Cannon, for the unpaid balance of the purchase-money, the two writings obligatory sued on in this cause.

Denies that Alderson's purchase of the land under execution was affected by any actual knowledge on his part, or actual notice to him, that Anderson, the defendant in the execution, was not the owner of the land. Admits that George West, who purchased the land for Alderson, had such notice, and that H. W. Walter, who investigated the title for Houston, gave that notice; so that, if Alderson can be affected by legal or constructive notice through West, Houston is also equally affected through Walter.

Avers that George West never informed Alderson of the fact that he had notice, when he purchased the land at sheriff's sale, that Anderson was not the owner of the land, or that the sale had been forbidden.

Avers, also, that Alderson's purchase of the land was *bonâ fide*, and that he concealed from Houston, when he sold him the land, no fact whatever, then known to him, which it was his duty to have communicated to Houston, in regard to the title.

The jury found for the defendants below, and plaintiffs prayed this writ of error.

*Stearns* and *Glenn*, for plaintiffs in error.

As to the insufficiency of the notice to West, we rely on

2 Watts, 78; 2 Sumner, 486, 552; 3 Vesey, 486; 26 Maine, 484; 8 Serg. & Rawle, 484; 7 Watts, 261; 10 Ib. 67–274; 5 Watts & Serg. 284.

On the effect of such notice as West had, we rely on Dart. on Vend. 378, 379; 1 House of Lords Cases, 605; and all general cases on this point.

*Watson*, for defendants in error.

The owners of the legal title to the land, asserted their title against Houston before he had paid the money which he had contracted to give for the land, and Alderson was fully informed of the defect in his title, resulting from the notice to his agent, West, before he, Alderson, had been paid what Houston agreed to pay him. At this point, at least, Alderson's conscience became affected, and he should not further have attempted to enforce his sale to Houston, by the collection of the money or otherwise. 3 Ired. 219; 10 S. & M. 169.

Notice to West was equivalent to actual notice to Alderson. 2 Sugd. on Vend. 315; 5 Leigh, 627.

The verdict of the jury is entitled to much weight in favor of defendants.

· · Mr. Justice YERGER delivered the opinion of the court.

James C. Alderson, by his agent, George West, became the purchaser at a sale made by virtue of an execution against Nathaniel Anderson of a tract of land. This land he afterwards sold to the defendant, Houston, by a quitclaim deed, Houston being informed of the manner in which Alderson acquired his title. The defendants, who are sued upon a writing obligatory given for the purchase-money, resist payment upon the ground, that they were deceived and defrauded by Alderson in the sale of the land, while they admit that Alderson only sold by a quitclaim deed, and that they knew he had obtained title to the land by virtue of an execution sale of it, as the property of Nathaniel Anderson; and that they took upon themselves the risk of the validity and legality of the execution, and the sale under it, so far as the proceedings connected with the sale disclosed upon their face the facts of

the case; yet they say, that the sale under the execution to Alderson was fraudulent and void, which fact was known to Alderson, but concealed by him from them. It appears from the pleadings and proof, that when the sale under the execution against Anderson was made, he was not the owner of the land, but had previously sold and conveyed it by deed to A. F. Hopkins & Co. It also appears, that West, the agent by whom Alderson purchased the land, had notice when he made the purchase for Alderson, that Anderson did not own the land, and that he had no interest in it. But it does not appear, that Alderson knew these facts when he sold to Houston; or that West, the agent, by whom he purchased, ever communicated to him the knowledge he had received on the subject; or that notice had ever been given to him at any time, that Anderson did not own the land, and that it belonged to A. F. Hopkins & Co.

On this state of facts, it is contended by Houston and Cannon, that although Alderson did not have notice in fact, the notice given to West, the agent, was notice in law to Alderson of the title of Hopkins & Co.; and though he did not actually know, when he sold to the defendant, that the land belonged to Hopkins & Co., yet, as the agent through whom he became the owner of the land, did know this fact, the law will charge him with knowledge of all the facts of which his agent had notice.

It is certainly true as a principle of law, founded upon reason and sound policy, that wherever a party purchases property through the agency of another, notice, communicated to that agent during the progress of that negotiation, of the rights of third parties to the property, will be held, in any controversy with such third parties in relation to it, as equivalent to direct notice to the principal. 2 Sugd. on Vend. 215.

So, too, notice given to an agent employed to purchase property of any defect in the title or quality of the property, will be equivalent to notice of those facts to the principal, in any controversy that may arise between him and the vendor in relation to the property.

We think it may also be fairly deduced from the adjudged

Ross et al. *v.* Houston et al.

cases, and from principle, that if a party employ an agent to sell property, and notice be given to that agent of such defects in the title or quality of the estate, which, if known to the principal, it would have been his duty to disclose to the purchaser, it would be the duty of the agent also to disclose them to the purchaser; and in the event of his failure to do so, that the purchaser might be relieved from the contract in the same manner and to the same extent, that he would have been relieved, if the principal had known the facts, and made the sale without disclosing them; and this too, although the principal, when his agent made the sale, was ignorant of the defects, the title, or quality of the estate. This is certainly as far as any adjudged case, or any sound legal principle, would warrant the court in extending this doctrine of implied notice.

But the case before us does not fall within the operation of either of the foregoing rules. On the contrary, the attempt is now made to extend the doctrine still further, and we are asked to declare not only, that notice given to an agent to buy property shall affect the conscience of the principal in every matter touching the purchase of the property, and the title thereby acquired, so far as the rights of third parties exist in relation to the property, but also that knowledge of defects in the title or quality of the estate thus possessed by an agent employed to purchase, shall be considered in law as made known, though in fact they were not made known, to the principal, so as to affect his conscience in any future sale he might make of the property.

We do not believe either the law or sound policy will warrant such an extension of the rule.

So far as the rule has heretofore been established, that notice to the agent shall be treated as notice to the principal, we are willing to enforce it, as a rule of sound policy, although in individual cases it may sometimes operate harshly. But we are not willing to extend it further than it has heretofore been carried; and we are, therefore, of opinion, that if Alderson, at the time he sold to Houston, did not know in fact that he had acquired no title to the land by the purchase under the execution

sale against Anderson, because the land belonged to A. F. Hopkins & Co., and not to Anderson; the notice of those facts given to West, the agent, by whom he purchased the land, will not be treated as implied notice, so as to affect his conscience in the subsequent sale made by him of the property, and thereby entitle the purchaser to insist upon an avoidance of his contract.

As the circuit judge laid down the law differently, we must reverse the judgment, and remand the cause.