## JAMES RIMER *v.* BARNEY DUGAN.

1. VENDOR AND VENDEE: WHEN VENDEE ENTITLED TO RESCIND FOR MISREPRESENTATION AS TO TITLE.—Where the vendee relies upon the representations of the vendor, in reference to the title of the land, and this is known to the vendor, the vendee is entitled, without previous eviction, to rescind, in case the title is bad, although the vendor honestly believed the representations to be true at the time he made them.

2. CONTRACT: WHERE MISREPRESENTATIONS, THOUGH INNOCENTLY MADE, ARE BINDING.—Where one party to a contract knows that the other trusts to his representations, and not to his own judgment, in relation to a matter material to the contract, it makes no difference, if the representations be false, whether the party making them knew their falsity or not. In either case he is bound to make the representations good.

ERROR to the Chancery Court of Tippah county. Hon. Joel M. Acker, judge.

James Rimer *v.* Barney Dugan.

This was a bill filed on 14th September, 1857, by plaintiff in error against defendant in error, to rescind a land trade made between them on the ground of fraudulent representations made by the defendant in relation to the title of the land conveyed to the other party.

It appears from the pleadings and proof that in March, 1857, the complainant and defendant agreed upon an exchange of lands, and thereupon each conveyed to the other a quarter section of land, with covenants of warranty of title.  That the land conveyed by defendant was held by him under a tax-title alone, and that this was known to complainant.  The parties had been some time negotiating about the trade, and complainant seemed at first not to be satisfied with the tax-title, and applied to two of the witnesses for advice on the subject.  That one of them advised him that tax-titles were not generally good; that if the law was complied with in every respect, the sale was good— otherwise bad; and the other witness advised him to have nothing to do with a tax-title, as he had seen one of them set aside.  He said to this witness that he had known a tax-title to be sustained.  He stated to another witness, both before and soon after the trade, that he was satisfied with the tax-title; that defendant had been paying taxes on the land for ten years, and that Judge Price (a lawyer) had said the title was good.  One of these witnesses did not remember that complainant, in making these statements, made any reference to statements made by defendant as to the validity of the tax-title; another, testifying to a different conversation, did remember that he alluded in the conversation to statements which had been made by defendant in reference to the validity of his title.  One witness proved that, after the trade, complainant said he was perfectly satisfied with his title, and that the land he got from defendant was worth twice as much as the land he exchanged for it.

It also appeared that the night before the trade was consummated, defendant stayed at the house of complainant; that complainant, being pressed for an answer to the propositions for a trade which had been made by defendant, said he would give an answer next morning.  In the morning complainant said to defendant, "Now, Barney, I am going to trade with you on

your word. You say your title is as good as any man's. If so, I will trade with you." Defendant said his title was as good as any man's title, and if it was not he would make it so; and that, if Rimer ever found a better owner than he was, he would cancel papers without any law about it. The trade was thereupon concluded.

It was shown that the tax-sale was void, and that defendant had no title; but it was not shown that any proceedings had been instituted or threatened against complainant to recover the land.

The defendant in his answer stated that he did not know, at the time of the trade, whether his title was good or not; that his representations on that subject were the mere expression of his opinion, and that complainant knew he only had a tax-title, and traded on his own judgment; and that the records which showed the invalidity of the tax-title were open to the inspection of complainant.

The chancellor, upon final hearing, dismissed the bill, and complainant sued out this writ of error.

*O. Davis,* for plaintiff in error.

The questions which arise in this case are,

1. Is a vendee, who has taken a deed with covenants of warranty, entitled to relief before eviction against a vendor who has made a false or fraudulent representation as to his title?

This question is fully answered in the affirmative by this court, in the following cases, viz.: *Parham* v. *Randolph,* 4 How. 435; *English* v. *Benedict,* 25 Miss. R. 167.

2. Does the testimony establish such a case of fraud, either in fact or in law, as to entitle the plaintiff in error to relief, under the rule as above laid down?

Dugan's tax-title was utterly worthless. It was entered December 26, 1840, and sold for taxes of 1845. The Act of Congress admitting the State into the Union (see Hutchinson's Code, p. 60) prohibited the taxation of all lands sold by the government until five years after the sale. No taxes could therefore have accrued on the land, until the 1st of April, 1846. The Act of Congress of 1847 (see Brightly's Dig. p. 497) authorized

the taxation from the date of entry ; but this title is not affected by that Act.

Dugan's representation that his title was good, as proved by witnesses—Aldridge, W. D. Rimer, Keenin, and Moffett—was *false.*

Keenin and Moffett say he spoke of it as a " *good tax*-title." The records of this court will show that public attention has been very generally directed to tax-titles for the few years preceding the date of this transaction—March, 1857 ; so that parties in speaking of them might well call them " good," or " not good," according to their quality. But few of them fell into the first class. Dugan, however, having represented his title as a " good" one, he is responsible for it.

Rimer relied and trusted entirely in Dugan's *word* as to the title. This is proved by the witnesses who were present when the trade was made—Aldridge and W. D. Rimer. They say that Rimer said : " Now, Barney, I am going to trade with you on your own word. You say your title is good," &c.

There is no proof that Dugan knew of the defects in his title. This is immaterial. 1 Story Eq. sec. 193 ; 4 How. 451 ; 3 Cranch, 270.

The court is specially referred to these authorities, as fully establishing the principle that, where a vendor makes false representations, it is not material whether he know them to be false or not, nor if he be *mistaken ;* it is equally a *fraud in law* on the vendee, as it tends to mislead him.

It may be said that the defect in Dugan's title was a matter of record. This is also immaterial. He trusted to Dugan's word. 4 How. 451 ; 1 Story Eq. sec. 187 ; 10 Yerger, 131.

*George L. Potter,* on same side.

The defendant admits that, at the time of the exchange of lands, he did not know whether his own title was good or not ; and yet he did represent to plaintiff that it was a perfectly good title. True, he denies this, but the fact is proved by Aldridge and Rimer.

These witnesses also prove that defendant agreed to " cancel

papers and take the land back without any lawsuit about it," if his title was not good.

It will not avail the defendant to show that plaintiff asserted the title to be good, or made statements showing how long defendant had been in possession of the land; for it is manifest that those statements by plaintiff were founded on the assertions of defendant; and the fact that this was so is proved, as to title, by Aldridge and Rimer, and as to possession by other witnesses. Though defendant made such representations to plaintiff as to the long time he had occupied the land, still he does not pretend, in his answer, that he ever so occupied it; and Parker proves that defendant was never in possession: he shows the land had never been occupied, even by third parties, except for a very short time. The fact and date of entry, in 1840, is proved by an abstract from the land records, p. 8, 9; and seems admitted by the answer, p. 12.

In view of the facts, it is vain for defendant to pretend that his conduct was not fraudulent. He represented that he had a good title, and yet says he did not, at the time, know whether that representation was true or false; and the proof shows it was false.

But we are not put to a reliance on such a case. We may admit there was no fraud, and yet claim the relief sought. If the parties both supposed the title was good, and it appears they were mistaken, the court will rescind.

" It is true that, as a general rule, a court of equity will not relieve a party from a contract made by him under a mistake, or in ignorance of the law. But it is also true that it will grant relief where both parties enter into the contract under a mutual mistake in a material fact, and without which mistake the contract would not have been made." *Nabours et al.* v. *Cocke et al.,* 24 Miss. R. 53, 54. The facts and decision in the case cited are conclusive of the present case.

*F. Anderson,* for defendant in error.

This was a bill filed by the appellant to rescind a contract for the sale of land, or rather for the exchange of land between himself and defendant, on the ground of false representation of

title by the defendant.   But the proof makes it clear that the appellant knew as much of the title as the appellee, and took it on his own judgment, relying on the fact that, if the tax-title under which the appellee claimed was not good, he nevertheless had a title by the Statute of Limitations.   It is equally clear from the proof that the pretended representation of the appellee was not a false statement of any fact connected with his title, the nature of which was fully known to appellee, but a mere expression of an opinion as to the law of the case.   Under these circumstances, it is not necessary to cite authorities to show that the appellant, who has a deed with covenants of warranty and has not been evicted, has no right to a decree rescinding the contract.

HARRIS, J., delivered the opinion of the court:

The complainant filed this bill to rescind a contract for the exchange of lands between himself and defendant, on the ground of false representation of title by the defendant.   Upon the final hearing, the bill was dismissed, and this writ of error is prosecuted to revise that decree.

The record discloses the fact that the complainant dealt with the defendant *solely and expressly on the faith of his representation* that his title to the land, for which the complainant was about to make an exchange with him, was perfect.   It further shows that defendant not only knew that complainant relied on his representation alone, but, to assure him of safety in such reliance, further represented to complainant that if his title was not good, he, defendant, would make it so; and that if complainant ever found a better owner than defendant, that he would cancel the papers without any law about it.

The record further shows that defendant had no title to the land he thus claimed to own, and for which complainant exchanged his land.

It is clear from the record that the complainant acted on the faith of defendant's representation, and that such representation was false.   Whether the false representation was made with a knowledge that it was false, or without a knowledge that it was true, is wholly immaterial.   If, knowingly, he represented what

was not true, there can be no doubt he should be bound to make reparation. If, *without knowing* whether his representation was true or not, he took upon himself to make it to complainant, and upon the faith of it complainant acted, he is not less bound, although he may have been only mistaken, and therefore comparatively innocent. 2 Tucker's Lect. p. 421, 422, citing 1 Brown's Ch. C. 546; 6 Ves. 174, 183; 10 Id. 475; 1 Ves. & B. 355; 9 Ves. 21; and see 1 Story Eq. sec. 193; 3 Cranch, 270.

The same doctrine has long been settled in this court. See *Parham et al.* v. *Randolph et al.*, 4 How. 451; *Davidson* v. *Moss*, 5 Id. 684; *Hall* v. *Thompson*, 1 S. & M. 485; *Clopton et al.* v. *Cozart et al.*, 13 Id. 363; *Oswald* v. *McGehee*, 28 Miss. R. 340; *Lindsey* v. *Lindsey*, 34 Id. 432.

When the vendee relies on the representations of the vendor, and acts upon the faith thereof, without relying on his own judgment or opinion, and this is known to the vendor, the latter cannot shelter himself under the pretence that his representation was a mere expression of opinion, when it is discovered to be false.

That the complainant may resort to equity for relief against the fraud, instead of relying upon his covenant of warranty, is well settled in this court. *Davidson* v. *Moss*, 5 How. 673; *Parham et al.* v. *Randolph et al.*, 4 Id. 451; *English* v. *Benedict*, 25 Miss. R. 167.

Let the decree be reversed, and a decree rendered here cancelling the respective deeds executed by the parties, and also the note executed by complainant to defendant, and further directing writs of possession to be issued by the clerk of the court below.