STEPHEN LEACH *v.* HELEN HIRSHMAN.

[44 South., 33.]

DEEDS. *Undue influence. Fairness of transaction. Burden of proof.*
   A deed executed by an infirm and feeble-minded person for an inadequate consideration will be cancelled by a court of equity in the absence of evidence showing the fairness of the transaction and the grantor's capacity to make the deed.

FROM the chancery court of Lowndes county.
HON. JAMES F. McCOOL, Chancellor.

Leach, appellant, was complainant, and Mrs. Hirshman, appellee, defendant in the court below. From a decree in defendant's favor the complainant appealed to the supreme court.

Leach purchased the land in controversy from one Christopher in 1885, giving his note for $350 therefor, secured by a trust deed on the property. He took possession, and improved, cultivated, and occupied the premises as his homestead. The note was afterwards transferred to one Gross, who afterwards assigned it to Mrs. Hirshman. Leech kept up the payment of interest and taxes from the date of his purchase, and had twice renewed the note, and averred that he had made payments on the principal, for which he claimed credit. In 1900 Mrs. Hirshman induced Leech to execute to her a deed conveying the land, the deed reciting a consideration of $350. Leech, however, continued to occupy the property after its execution and paid taxes thereon as before and on the trial of the case testified that he had no recollection of ever having executed the deed. In 1904 Mrs. Hirshman began

to assert title to the land, and Leech instituted this suit to cancel the deed and for an accounting.

*Thomas J. O'Neill,* for appellant.

The case of *Culp* v. *Wooten,* 79 Miss., 503, s.c., 31 South., 1, is in many respects almost identical with the one presented by this record. In the language of the court in that case (p. 507) "Whatever the real facts may be, it cannot be gainsaid that there is testimony tending to show that this illiterate old man was the victim of a fraud, by which he was deprived of everything he had on earth, of land and personal property, accomplished by a violation of trust and confidence." Words directly applicable to the case of appellant here. Further from the same opinion: "It might be inferable from the record according to the *rationale* of human transactions that Hirshman (in this case) wanted this negro's land in preference to the payment of his debt."

The original bill of appellant charges that when called upon in January, 1900, to execute a paper to appellee that by reason of his illiteracy he did not know what it was and the proof shows conclusively that he was infirm, aged and imbecile, and that he was overreached and defrauded, and that he never parted with the possession of his home.

While inadeqacy of consideration is not a distinct ground of defense at law or relief in equity, "Yet it is evidence of fraud which is both; and while, as evidenced it is ordinarily entitled to a very little weight, standing alone, yet when it is coupled with other circumstances showing overreaching or oppression, or when the parties stand in such relation that this will be presumed, inadequacy becomes a material element of constructive fraud." Here we have an aged, infirm, illiterate man, who for many years had been trading with the husband of appellant, herself and her son, who was shown by the son to have been, all of his life, peculiar, but confiding in those whom he believed to be his friends, and whose homestead is

shown by two or more of his nearest neighbors, themselves large land-holders, to be worth $8 or $10 per acre, gratuitously making a deed for an alleged indebtednass which the proof in the case shows had long since been overpaid, and after making this deed we have the pitiful spectacle of this old man making his annual pilgrimage to the courthouse to pay his taxes and according to the testimony of the little "Shylock" son of appellee, persisting in paying the taxes when notified not to do so, and the further remarkable act on the part of Hirshman himself in charging the old man up with the tax on the land after he had taken the deed from the appellant and according to his account paid the taxes on the land himself; these and other facts show conclusively that appellant never knew that he had made a deed and that appellee and her son never dared to advise him of the fact until years had rolled by and that the information when given to the family of the old man resulted, a few days later, in this suit; all going to show that a fraud had been perpetrated and the old man's home taken from him by means and under circumstances that cannot be sanctioned and upheld by this court.   6 Am. & Eng. Ency. Law, 699, and authorities there cited.

*William Baldwin,* for appellee.

The pretenses upon which the appellant sought to vacate his own deed were so flimsy, as a matter of fact, so poorly supported by evidence, that the chancellor had no trouble in reaching the conclusion that they were spurious and simulated. His decree ought not to be reversed, nor will it be unless the great weight of the evidence be against it.   The weight of evidence is not determined by courting witnesses.   There is abundant testimony to support the decree, and the testimony of the complainant's witnesses bears internal evidence of its unworthiness; in fact much of it falls, but little, if any, short of perjury.   We confidently rest on the finding of the court below.

Argued orally by *C. H. Alexander,* for appellee.

MAYES, J., delivered the opinion of the court.

We are unable to agree with the chancellor in his view of the facts in this case, and think he should have canceled the deed executed by Leech to Mrs. Hirshman on the 1st day of January, 1900, and ordered an accounting to be had, charging Leech with the amount of his note, with interest, and crediting him with all sums paid by him on this note to the original or any subsequent holder of same. The testimony in the case leaves it doubtful who is now the lawful owner of any balance that may be due on this note, if there is any balance due, and we leave this question to be settled by the chancellor. When the account is properly stated, if it be found that any sum is still due on this land as purchase money, it should be charged as a lien on the property in favor of such person as the chancellor may find to be entitled to same, and Leech should be ordered to pay whatever may be due to the parties properly entitled thereto, in default of which the property should be sold for the purpose of paying same. In stating the account, all overcharges, or improper charges, or usurious charges, if any, should be eliminated, and the rule in regard to partial payments applied, as required by § 2351 of the Code of 1892. If it shall appear that Leech has paid Mrs. Hirshman more than was due, he shall have judgment for any overplus.

The record in this case shows that Leech is between eighty and one hundred years old. At the time this deed was made to Mrs. Hirshman he was infirm, of feeble intellect, and seems to have no recollection of ever having made the deed, and though the deed was made in 1900, and there were several members of his family living on the place with him, none of them seem to have known it until nearly four years after the deed was executed, when for the first time, so far as they knew, Mrs. Hirshman began to assert title to it. After the

deed was made Leech and his family continued to live on the place, just as they had done prior to that time, paid taxes on it, and not only were charged with the taxes on this land in the account rendered, but were charged with interest on the taxes. When this deed was made, Leech prior to that time had executed a deed in trust on the land to Mrs. Hirshman in renewal of the former note, and when she undertook to close it out, instead of having it sold at public auction, she procured him to execute to her a deed to the land for the purported consideration of $350. At the time this deed was made, the weight of testimony shows, even if he was due this amount, that this eighty acres of land was modestly worth $6 per acre, or $480, or $150 more than the amount which was claimed to be due. If Leech was due the amount claimed at that time, he was entitled to have any overplus of value paid to him, in the light of the facts in this record. This $150 to him, speaking from this record, was an enormous sum. The record shows that though the original purchase price to be paid for this property was $350, and though the property was bought in 1885, nearly twenty years before this suit was instituted, he has had great difficulty in ever collecting to- gether enough to discharge this sum. Therefore this excess of value amounted to a great deal to him.

The proof shows that he did not possess sufficient intellect to make any valid contract; that is to say, he was almost a centenarian, feeble of mind and body, and under these cir- cumstances, after these facts were shown, it devolved upon appellee to show the most perfect fairness of this transaction, and the capacity of Leech to make the deed, and we think ap- pellee has utterly failed to do so. We cannot give our sanc- tion to a deed obtained under these circumstances. In a case of this character, where the mortgagee obtains a deed from the mortgagor by private agreement, and still retains title to the property, nothing but the utmost fairness will prevent the deed from being canceled at the instance of the mortgagor. Leech

is shown to have reached extreme old age, and his intellect and memory suffered such impairment as would make him easy prey. If the creditor collect his debt, he surely cannot complain that he is not permitted to reap an advantage over one of impaired intellect.

*Reversed and remanded.*