ALEXANDER *et al. v.* MEEK *et al.*

[96 South. 101. No. 23180.]

VENDOR AND PURCHASER. *Purchaser held entitled to rescission of land contract for false representations of vendor.*

Where the agent of the vendor of property makes representations of fact as to the boundary lines, and the vendee relies upon these representations, which constitute one of the inducing causes of the consummation of the sale, and the representations are false in a material respect, and the falsity of which was not discoverable by an inspection of the land, and the purchaser was actually misled by these representations, *held,* that the purchaser is entitled to a rescission and cancellation of the contract.

APPEAL from chancery court of Humphreys county.

HON. E. N. THOMAS, Chancellor.

Suit by J. A. Alexander and others against G. W. Meek and others. From a decree dismissing the bill, plaintiffs appeal. Reversed and remanded.

*J. B. Harris* and *Moody & Williams,* for appellants.

The rule is thus laid down in 1 Ruling Case Law, page 319, Section 6: "Whatever a man has a legal right to do he may do with impunity, regardless of motive, and if in exercising his legal right in a legal way damage results to another, no cause of action arises against him because of a bad motive in exercising the right. It has been said that malicious motives make a bad case worse but they cannot make that wrong which in its own essence is lawful.

The rule is thus laid down in 1 Cyc. page 668, in Note on page 669: "Where there is a legal right to do a certain act, the motive which induces the exercise of the right is of no importance."

I think the rule is too well established to require the citation of authorities. It is not admitted; on the contrary, it is denied positively that the act of the complainants in seeking to rescind the contract arose from the fact that the land had decreased greatly in value. The rule governing this case, I think, is stated clearly in the case of *Allen* v. *Luckett,* 94 Miss. 873. This rule is based upon the rule as laid down in 2 Pomeroy's Equity Jurisprudence, paragraphs 852-853. *Bingham* v. *Madison,* 103 Tenn. 358, 47 L. R. A. 267.

At all events, I think it would be trifling with the court to undertake to argue that Dr. Alexander was not relying upon the representations made by the negro. He made none. There can be no possible question in this case but that Dr. Alexander was relying entirely upon the representations of Garnett, the agent of Meek. In other words, for the purposes of this case, Garnett was Meek himself making the representations in regard to the land.

But we insist that it makes no difference, here, for the purposes of this aspect of the case, whether Garnett knowingly misled the complainants in regard to the boundaries of the land, and as to the amount of the land which was under the lake. His representations were false, and the complainants relied upon them; this is the essence. 2 Pomeroy's Equity Jurisprudence (4 Ed.), page 1714, sec-

tion 852; 9 Corpus Juris, page 1166; 21 Corpus Juris at page 88; *Fraser* v. *Bank,* 101 Ark. 140; 2 Pomeroy's 870; *Fleisher* v. *Magee,* 111 Ark. 330.

In other words, this is not a case for reformation, but for rescission. I invite the court's attention to the case of *Green* v. *Stone,* 54 N. J. Eq. 387; *Wirschingburg* v. *Grand Lodge,* 67 N. J. Eq. 711, 56 Atl. 613; *Deuris* v. *Pierce,* 103 N. E. 296; See, also, extensive note to *Green* v. *Stone,* 55 Am. St. Rep. 577; *Sleinmeyer* v. *Schoffer,* 117 A. S. R. 226, note pp. 233, 242; *Belknap* v. *Sealey,* 67 Am. Dec. 120; 2 Pomeroy, secs. 856, 902, sub-division 3, on page 392. Prompt disaffirmance was necessary after they had obtained knowledge of the facts. 2 Pomeroy, 297. But there could be no waiver or acquiescence by mere lapse of time in discovering the facts. 2 Pomeroy, 817.

Before closing the brief I desire to say that I must not be taken as conceding in any way, that misrepresentations in this case were not knowingly made, but I have endeavored to present the case in the most favorable aspect for the appellee, and to show the court that, admitting for the purpose of this discussion that the misrepresentations were innocently made, still the decree must be reversed.

*Moody & Williams,* for appellants.

The facts disclosed by the records in this case present three views of the rights of the appellants as against the appellees, the acceptance of any one of which necessitates a reversal of the decree appealed from. First: The identity of the land bargained for is different from that actually conveyed. Second: The representations made by Mr. Garnett, the agent of the appellees, that the public road was the southern boundary of the land to be conveyed, on which appellants relied, were false. Third: The representations made by G. W. Meek, one of the appellees, that there were not exceeding three acres of the land to be conveyed, in the lake, on which appellants relied, were likewise false.

First.   The representations made by G. W. Meek, one of the appellees, to the effect that there were not exceeding three acres of the land to be conveyed, in the lake, on which the appellants relied, were false.   It is a rule of presumption that ordinarily a witness who testifies to an affirmative, is to be preferred to one who testifies to a negative, because he who testifies to a negative may have forgotten."

We submit that this is a sound exposition of a recognized rule of evidence, of frequent application, and that the reason for such rule dispenses with immediate or further comment. *Stitt* v. *Huidekoper,* 24 L. Ed. 644-647.

On the argument of this case in the lower court the attorney for the appellees, without directing attention to the facts and legal principles therein stated, and without comment, read to the court the following part of the opinion of this court in *Johnson* v. *Jones,* 13 S. & M. 590: "This is one of the numerous cases that have grown out of the rash and reckless spirit of speculation, and the heedless contracting of engagements as surety, that prevailed in the community some years ago. When the bubble has bursted, an appeal is made to the law, to relieve men from the consequences of their own temerity.   A more apt illustration of the whole process could scarcely be found than is exhibited by this record."

Why this extract was read, unless to insinuate that the appellants in this case should be thus stigmatized, we are utterly unable to conceive.   True it is that this suit was instituted following the financial collapse of 1920, yet there is no reason to infer that because one act follows another, the latter is a result of the former.   Certainly it will be conceded that *"post hoc, ergo propter hoc* is not sound reasoning" either in morals or in law."

Second.   The identity of the land bargained for is different from that actually conveyed.   We assert as a fact, disclosed by the record in this case, as to which there is absolutely no conflict whatever in the testimony, the fol-

lowing: "The land in controversy was, by the appellees, placed in the hands of Mr. Garnett, as their agent, for sale. Mr. Garnett showed Dr. Alexander, one of the appellants, the land which he desired to sell him. The land which he showed the doctor, and which he desired to sell the appellants, was all north of the public road except a small tract in the southeast corner, in a pasture, containing four or five acres. With or without the conversation between Mr. Johnson and Mr. Meek eliminated, there is absolutely nothing whatever in the record to indicate that Mr. Garnett showed Dr. Alexander any part of the land, which he desired to sell, as being in the lake, nor anything to indicate that appellants were aware of that fact. The description of the land was not, by Mr. Garnett, given to Dr. Alexander when he took him down there to show him the land. The description was later, by the former given to Mr. Johnson, at which time he represented that the road was the southern boundary."

This land, thus shown Dr. Alexander, and which the agent desired to sell to appellants, the record discloses as a fact, is not the land conveyed to them. Certainly it will be conceded that the land, actually conveyed, contains from thirty-five to forty-five acres in the lake, absolutely worthless, all of which is sound of said public road. No argument is required to enforce the statement that he was entitled to rescind. *Selby* v. *Matson,* 14 L. R. A. (N. S.) 1214.

Certainly, it must be conceded, that the appellants had a right to have the thing, the particular land for which they traded, conveyed to them. The law of the case, as to this particular point, has been accurately stated by this court and applied to facts substantially the same as those appearing in this record in the recent case of *Brown et al.* v. *Coker et al.,* 29 So. 585. See also as to this point, 39 Cyc. p. 1267 (IV); 9 Corpus Juris, p. 1166, sec. 17.

In concluding our argument as to this feature of the case, we direct attention to the opinion of this court in *Allen* v. *Luckett,* 94 Miss. 868. 2 Pomeroy's Equity Juris-

prudence, 852, 253; *Bingham* v. *Madison,* 103 Tenn. 358, 52 S. W. 1074, 47 L. R. A. 267.

Third. The representations made by Mr. Garnett, the agent of the appellees, that the public road was the southern boundary of the land to be conveyed, on which appellants relied, were false.

The Law. Representations of fact, by Garnett as agent, binding on appellees. Representations made by an agent, at the time he is contracting for his prncpal, are binding on the principal as much so as if such representations were made by the principal himself. *Wimple* v. *Patterson,* 117 S. W. 1034-5; *Lover* v. *Robinson,* 54 Tex. 510; *Rhoda* v. *Annis,* 75 Me. 17, 46 Am. Rep. 354; 30 Am. & Eng. Ency. Law (2 Ed.), pp. 87, 156.

A further enunciation and application of this principle may be found in 2 Corpus Juris, 856. *Sharp* v. *New York,* 40 Barb. (N. Y.) 256-73; *Rhoda* v. *Annis,* 46 Am. Rep. 354; *Bennett* v. *Judson,* 21 N. Y. 238; 21 R. C. L. 850 & 906.

The liability of appellees, for the act of their agent, having been established, the next question is: Was there a false representation of a material fact? The representation that the road was the southern boundary is clearly established. A respresentation as to the boundary has always been recognized to be a representation of a material fact. 26 C. J. 1195; *Allen* v. *Luckett,* 94 Miss. 868; *Davis* v. *Heard,* 44 Miss. 50.

In a suit in equity, for rescission, is it necessary that it appear that the false representation of a material fact was knowingly made? As to an action at law, for rescission or damages, the principle is stated to be: "Mere misrepresentation, while it is no ground for an action at law for damages, may be ground for relief in equity, and may under some circumstances render the contract voidable and subject to rescission at law." 39 Cyc. 1253.

In a suit in equity for rescission, the principle is stated in 9 C. J., sec. 23, p. 1169; Story's Eq. Jur., 191-193; *Hazard* v. *Irwin,* 18 Pick. (Mass.) 95; *Hall* v. *Thompson,* 1 S. & M. 443; *Oswald* v. *McGhee,* 28 Miss. 340-351.

It is clear from the record that the complainant acted on the faith of defendant's representation, and that such representation was false. Whether the false representation was made with a knowledge that it was false, or without a knowledge that it was true, is wholly immaterial. 2 Tucker's Lect., 421, 422, citing 1 Brown's Ch. c. 546; 6 Ves. 174, 183; 10 Ib. 475; 1 Ves. & B. 355; 9 Ves. 21; and see 1 Story Eq., sec. 193; *McFerran* v. *Taylor,* 3 Cranch U. S. 270, 2 L. Ed. 436.

The same doctrine has long been settled in this court. See *Parham* v. *Randolph,* 4 How. (Miss.) 451; *Davidson* v. *Moss,* 5 Id. 684; *Hall* v. *Thompson,* 1 Smed. & M. 485; *Clopton* v. *Cozard,* 13 Id. 363; *Oswald* v. *McGhee,* 28 Miss. 340; *Lindsey* v. *Lindsey,* 34 Id. 432; *Rimer* v. *Dugan,* 39 Miss. 477-482,77 Am. Dec. 687; *Davis* v. *Heard,* 44 Miss. 50-58.

The principle has been applied where the false representation was as to the safety of the land from overflow. *Oswald* v. *McGhee,* 28 Miss. 340, 351; *Estell* v. *Myers,* 54 Miss. 174-185.

The principle has been applied where the false representation was as to the number of acres in cultivation. *Vincent* v. *Corbett,* 94 Miss. 46, 47 So. 641, 21 L. R. A. (N. S.) 85; See, also, *Rimer* v. *Dugan,* 39 Miss. 477, 77 Am. Dec. 687; *Davidson* v. *Moss,* 5 How. 673; *Parham* v. *Randolph,* 4 How. 435, 35 Am. Dec. 403; *McNeer & Dodd* v. *Norfleet,* 113 Miss. 611-629; 2 Story's Equity, 202; *McFerrin* v. *Taylor,* 3 Cranch, 270, 2 L. Ed. 436; *Parham* v. *Randolph,* 4 How. 435-451; *Ross* v. *Houston,* 25 Miss. 591-7.

Intent to Deceive. As to intent to deceive, growing out of a false representation of a material fact for which the appellees are liable, we direct attention to the following: *McNeer & Dodd* v. *Norfleet et al.,* 113 Miss. 611, 74 So. 577, Ann. Cas. 1918E. 436; *Markowsky* v. *Rubenstein,* 124 Miss. 728.

Right of Rescission. Having established that there was a false representation of a material fact, made with the

intent to deceive and which was relied on by the appellants to their damage and for which the appellees are liable, the question arises as to the right of the appellants to rescind. The law as to this point is well settled by this court. *Oswald* v. *McGhee,* 28 Miss. 340, 351; Story Eq. Jur., 193; *Estell* v. *Myers,* 54 Miss. 174-185; *Hook* v. *Bowman,* 47 Am. St. Rep. 691.

*Wasson, Pritchett & Nelson* and *Green & Green,* for appellees.

Rescission is not strictly of legal right, but is addressed to the sound discretion of the court, and where the chancellor, as here, has exercised that discretion, there could be no reversal, unless there was an abuse of this discretion. *Hester* v. *Hooker,* 7 Smedes & Marshall's 788; 9 C. J. 1161, announces the rule.

This court will accept the finding of the chancellor as true, where there has been, as here (we submit with deference), a conflict in the evidence, which we will show hereafter. *Kelly* v. *Miller,* 30 Miss. 19; *Robertson* v. *Cloud,* 47 Miss. 208; *Alabama & Vicksburg R. R. Co.* v. *Bolding,* 69 Miss. 255. *Therefore,* if there is any evidence to support the finding of the chancellor this court would not reverse.

Fraud must be proved clearly and convincingly, and that there was such fraud is as alleged. *Locke* v. *Keiler,* 90 Miss. 4; *Richards* v. *Vaccaro,* 67 Miss. 518; *Richardson* v. *Davis,* 70 Miss. 224; *Reynolds* v. *Coal Co.,* 100 Ala. 302; *Burke* v. *Johnson,* 146 Fed. 211; *Eyre* v. *Potter,* 15 How. 56; *Price* v. *Barrington,* decided by the Lord Chancellor in 1851; Vide, 7 Eng. L. & Eq. 254; See, also, C. J. 1249; *Jones* v. *Rogers,* 85 Miss. 804; *Weir* v. *Jones,* 84 Miss. 606; Section 893 (Id. Note 1) ; *Attewood* v. *Small,* 6 Clark and F. 232, cited in notes to section 893, Pomeroy's Eq. Juris. (4th Ed.) ; *Chicago Bldg. and Mfg. Co.* v. *Higginbotham,* 29 So. 79, 26 C. J. 1142.

An instructive case which arose in Mississippi is *Farrar* v. *Churchill,* 135 U. S., 34, Law Ed. 246. Coming to the point of the alleged representations, they are, at best, not supported by the evidence, "clearly and convincingly." So there is nothing in this alleged representation that was untrue. *Farrar* v. *Churchill,* 135 U. S. 609, holds that one who looks at a plantation, even of about eight hundred acres, can substantially tell what acreage there is "in cultivation."

The record shows that the appellee, in good faith and without fraud made, and that appellants profited, and still profit, by the purchase they seek to rescind, and there can be no relief granted appellants. As stated and emphasized, there is no pretense that any false representations were made to Davis and Sealy when they bought the land, and hence, Davis and Sealy were bound for the purchase money to appellants, but Davis and Sealy were unable to pay, and then appellants filed this suit to relieve themselves of paying.

In this review of the case, the question of what representation Garnett made to Alexander about the south boundary, becomes, with deference, an immaterial factor.

Wherefore, we respectfully suggest that the opinion heretofore rendered is erroneous, and that, upon reconsideration this case should be affirmed.

SYKES, P. J., delivered the opinion of the court.

The appellants as complainants seek in their bill to rescind and cancel a contract for the purchase of about two hundred forty-five acres of land in Humphreys county. This land was purchased by them from the appellees in 1919 for one hundred twenty-five dollars an acre. In their bill appellants offered to do equity and restore the *status quo ante.* The principal ground relied upon for rescission and cancellation is that one Garnett, agent of the appellees in the sale of the land, made false representations of a material fact as to the southern boundary of

the land, and that the appellants relied upon this representation, which was one of the material reasons and inducing causes for their purchase of the land. The chancellor dismissed the bill, and the appellants prosecute an appeal from this decree. The appellees also prosecute a cross-appeal which becomes unnecessary to consider.

The material facts in the case are not disputed. The appellants wanted to buy a small tract of land of about three hundred acres. The appellees had placed for sale with the real estate firm of which Garnett is a member this tract of land. It is admitted that Garnett in the transaction was the agent of the appellees. Garnett took the appellant Alexander out to the land to show it to him with the idea of selling it to him. There is no dispute in the record but that the northern, eastern, and western boundaries of the land were well marked by lines of fences. Alexander had never seen the land before. The well-marked northern, eastern, and western boundary lines were pointed out by Garnett to Alexander. Alexander testifies positively that the southern boundary line was also pointed out to him by Garnett; that Garnett stated to him that this southern boundary line was a road and also a part of a fence which ran parallel with the road; that south of this road was a lake; that he asked Garnett about the southern boundary line, and Garnett told him it was the road and the fence; that all of the land in the place was north of this road except three or four acres in the southeast corner of the land which ran down to the bank of the lake; that he relied upon the statements of Garnett as to the boundary lines of the land; that Garnett pointed out to him as a fact all of these boundary lines. Alexander reported this fact to his partner, Johnson. Garnett also told Johnson that the southern boundary line was this road and fence. Garnett upon his examination in chief as a witness for the appellees in one place testifies that he told Alexander that he thought the road and fence was the southern boundary of the land. On cross-examination, however, when distinctly asked if he meant to deny the

fact that he did not point out the southern boundary line
to Dr. Alexander as stated by him, he said he could not
say that he did not; that he did not remember. In other
words, Garnett did not deny that he made the representa-
tions to Alexander as to the southern boundary line. Nei-
ther did he deny that he made the same representations to
Johnson. Johnson was not with Alexander and Garnett
when the land was inspected. He made no inspection of
the land, but merely talked with Alexander, Garnett, and
with Meek, one of the appellees, when the sale was con-
summated. A description of the land was furnished to
the appellants, and Johnson, a lawyer, examined a map
in his office which showed a stream near the southern
boundary of the land. He also examined the map in the
office of Mr. Garnett. Neither of which maps indicated
that any of the land was in the lake. There is some con-
troverted testimony as to what appellee Meek said to the
appellant Johnson about the southern boundary of the
land. This being controverted, we will not discuss it in
this opinion.

As a matter of fact, of this two hundred forty-five and
a fraction acres at least twenty-four acres of it are in the
lake; a few acres are south of the lake. That land covered
by the lake is worthless. At the time of the sale the ap-
pellee Meek knew that fifteen or sixteen acres of this land
was in the lake. He said nothing about this fact to the
appellants.

The testimony of the appellant Alexander is to the effect
that he relied upon the representations of Garnett as to
the boundaries of the land; that he would not have pur-
chased the land had he not believed that the road and fence
as pointed out to him by Garnett were the southern bound-
ary line of the place. Johnson testified that he would not
have purchased the land had he believed that over two or
three acres of it in the southeast corner were in the lake.

To us it is manifest that it was impossible for Alexander
from his inspection of the land to have noted the fact that
there was a shortage in the tract north of the road of

twenty-five or thirty-five acres. The appellants were buying a tract of land of over two hundred forty-five acres, and it would be impossible from an inspection of the land to note this shortage. Neither was there any way for the appellant Johnson from an inspection of the two maps to discover the fact that an appreciable amount of this land was in the lake. In other words, it is manifest to us that this is not such a patent defect as could have been discovered by the appellants by the use of reasonable care and diligence on their part, but is a latent defect. Furthermore, that they had a right to rely upon the representations of Garnett as to the boundary of the land. It is further obvious, as is also shown by the uncontradicted testimony, that the fact that twenty-four or twenty-five acres of this land was in the lake and worthless for agricultural purposes, if known to the appellants, would have prevented them from purchasing the lands. Or in other words, the representation of the southern boundary line was a misrepresentation of a material fact which was one of the inducing causes of the consummation of the sale.

The witness Garnett testified that as a matter of fact he did not know the boundaries of the place. His want of knowledge, however, was not communicated to either of the appellants. We do not think that Garnett was trying to practice a fraud upon the appellants, but he merely made representations as to a fact which were false and about which fact he had no knowledge.

We have given the testimony in this case a thorough and painstaking investigation, and with the greatest deference to the views of the learned chancellor who tried the case in the lower court, we are satisfied that the uncontradicted testimony is clear and convincing that these representations of fact as to the southern boundary line were made by Garnett to the appellants, that they were material, that appellants were unable to discover the falsity of it by the exercise of due care and diligence, that they relied upon this representation, and consequently are entitled to a rescission and cancellation of the contract. The law gov-

erning the decision of this cause is well settled. In the case of *Allen* v. *Luckett,* 94 Miss. 868, 48 So. 186, 136 Am. St. Rep. 605, it is stated:

"It is immaterial whether actual fraud be imputed to appellant. The result is the same, if the transaction was the result of a mutual mistake. If the terms are stated according to the intent of the parties, but there is an error of one or both in respect of the thing to which these terms apply—its identity, situation, boundaries, title, amount, value, and the like—then it is elementary that a court of equity may grant appropriate relief, provided the fact about which the mistake occurs was a material element in the transaction."

Again, in *Oswald* v. *McGhee,* 28 Miss. 340, it is said: "This case depends principally upon the facts, the principles of law applicable to it in any point of view being well settled.

"The evidence sufficiently shows that the purchase was made by the appellee upon the faith of the representations of the vendor, and not upon his own judgment. If these representations were material, and were made either with or without an actual fraudulent intent, and really did mislead the purchaser and induce him to make the bargain, relying upon them, the contract cannot stand. Story's Eq. Jur. sections 191-193; *Hazard* v. *Irwin,* 18 Pick. (Mass.), 95; *Hall* v. *Thompson,* 1 S. & M. 443."

Also in the case of *Rimer* v. *Dugan,* 39 Miss. 477, 77 Am. Dec. 687: "It is clear from the record that the complainant acted on the faith of defendant's representation, and that such representation was false. Whether the false representation was made with a knowledge that it was false, or without a knowledge that it was true, is wholly immaterial. If, knowingly, he represented what was not true, there can be no doubt he should be bound to make reparation. If, without knowing whether his representation was true or not, he took upon himself to make it to complainant, and upon the faith of it complainant acted, he is not less bound, although he may have been only mis-

taken, and therefore comparatively innocent. 2 Tucker's Lect. pp. 421, 422, citing 1 Brown's Ch., c. 546; 6 Ves. 174, 183; 10 Id. 475; 1 Ves. & B. 355; 9 Ves. 21; and see 1 Story, Eq. section 193; (*McFerran* v. *Taylor*) 3 Cranch (U. S.) 270 (2 L. Ed. 436).

"The same doctrine has long been settled in this court. See *Parham et al.* v. *Randolph et al.* 4 How. 451 (35 Am. Dec. 403) ; *Davidson* v. *Moss,* 5 How. 684; *Hall* v. *Thompson,* 1 S. & M. 485; *Clopton et al.* v. *Cozart et al.,* 13 Id. 363; *Oswald* v. *McGehee,* 28 Miss. 340; *Lindsey* v. *Lindsey,* 34 Id. 432."

And in *Davis* v. *Heard,* 44 Miss. 50: "Fraud vitiates everything into which it enters, and the vendor who makes statements which he knows to be untrue, is guilty of a direct fraud, if the vendee is thereby deceived to his prejudice. And if he undertakes to make statements without knowing whether they are true or false, this is also a fraud in law, and he must make those statements good. *Hall* v. *Thompson,* 1 S. & M. 485.

"Whether the party misrepresenting a material fact knew it to be false, or made the representation without knowing whether it was true or false, is wholly immaterial, for the affirmation of what one does not know or believe to be true, is equally, in morals and law, as justifiable as the affirmation of what is known to be positively false. And even if the party innocently misrepresents a material fact, by mistake, it is equally conclusive, for it operates as a surprise and imposition on the other party. 1 Story's Eq. 225, section 193; *Smith* v. *Richards,* 13 Peters (U. S.) 36 (10 L. Ed. 42) ; *Read* v. *Walker,* 18 Ala. 332, and *Shaeffer* v. *Sleade,* 7 Blackf. (Ind.) 178; *Bennett* v. *Judson,* 21 New York, 238, and *Shackelford* v. *Handley's Executors,* 1 A. K. Marshall, 496 (10 Am. Dec. 753) *Oswald* v. *McGehee,* 28 Miss. 340, and *Rimer* v. *Dugan,* 39 Miss. 483 (77 Am. Dec. 687).

"Upon a review of the authorities upon this subject, the doctrine seems to be well established that, when a party to a contract places a known trust and confidence in the

other party, and acts upon his representation, any mis-represesetation by the party confided in, in a material matter constituting an inducement or motive to the act of the other party, and by which an undue advantage is taken of him, is regarded as a fraud against which equity will relieve.

"The evidence sufficiently shows that the purchase in this case was made by the appellee upon the faith of the truth of the representations of the vendor, and not upon his own judgment. And, if these representations were material, and were made either with or without an actual fraudulent intent, and really did mislead the purchaser and induce him to make the bargain, relying upon them, the contract cannot stand, in case the appellee has made his application to rescind the same, within a reasonable time after the discovery of the facts that would warrant a rescission."

To the same effect is *Estell* v. *Myers,* 54 Miss. 174. See, also, *Vincent* v. *Corbett,* 94 Miss. 46, 47 So. 641, 21 L. R. A. (N. S.) 85; *McNeer* v. *Norfleet,* 113 Miss. 611, 74 So. 577, Ann. Cas. 1918E, 436; *Parham* v. *Randolph,* 4 How. 435, 35 Am. Dec. 403; *Ross* v. *Houston,* 25 Miss. 591, 59 Am. Dec. 231; *Markowsky* v. *Rubenstein,* 124 Miss. 724, 87 So. 278; 2 Pomeroy, sections 852, 853; 9 C. J. 1166; *Brown* v. *Coker,* 129 Miss. 411, 92 So. 585.

The testimony shows that as soon as the attention of the appellants was called to the fact that some of the land was in the lake, they employed an engineer to survey it. They exercised reasonable diligence after ascertaining this fact to have the contract rescinded and canceled.

The appellants are entitled to the relief prayed for in their bill. The cause will be reversed and remanded for an accounting, a settling of the equities between the parties, with instructions that the contract be rescinded and canceled.

*Reversed and remanded.*