# Jackson *v*. Day.

(Division A.   Oct. 5. 1942.)

[9 So. (2d) 789. . No. 35036.]

Campbell & Campbell, of Yazoo City, for appellant.

H. G. Warren, of Yazoo City, for appellee.

**J. O. Day,** of Tutwiler, for appellee.

**Roberds, J.,** delivered the opinion of the court.

This is an appeal from a decree of the chancery court dismissing the bill of appellant seeking to set aside and cancel a deed which she executed to A. J. Day, February 6, 1941, conveying to him fifty-three acres of land located in Yazoo County, Mississippi. The bill is grounded upon misrepresentations and overreaching of appellant by appellee and mutual mistake as to material facts, which induced the execution of the deed.

This is a fair summary of the facts: Andella Jackson became the owner of the lands under a partition deed in 1917. Shortly thereafter, she moved from Yazoo County to Coahoma County, Mississippi. She left the lands in charge of Westly Stuckey, her brother. She had been back to the old home only once—in 1927. Her brother had rented out the lands and paid the taxes thereon and from time to time remitted to her at least a part of the rents therefrom. At the time of the events hereinafter related, she was living some six or seven miles from Clarksdale with a married daughter who was a tenant on a large plantation in Coahoma County. She was a negro woman fifty-six years of age, ignorant and illiterate, unable to read or write.

Mr. Day was an educated, retired businessman, fifty-nine years of age, living at Bentonia in Yazoo County,

some two miles from the land in controversy, his principal occupation consisting in looking after his rental properties.

On August 1, 1932, the lands sold to the State of Mississippi for nonpayment of the taxes thereon for the year 1931. Andella did not know of this sale and her brother said he did not know the land had sold for taxes. He thought he had kept all taxes paid.

Mr. Day learned of the tax sale to the state. He was familiar with the land. In 1939, he applied to the State for a patent but he was unable to obtain it. It appears that he consulted an attorney and decided he would attempt to procure a deed from Andella Jackson. He went to Clarksdale with a prepared deed and procured the services of Mr. W. R. Ellis, a justice of the peace of Clarksdale, who accompanied him and another white man into the country in search of Andella for the purpose of obtaining from her a deed to the land. They were unable to find her. Mr. Day returned to his home. He did not mention to Westly his desire to acquire the land, nor make inquiry of him as to where he might find Andella. Some six weeks thereafter and on February 5, 1941, Mr. Day accompanied by a negro by the name of Shelby, who, it appears, resided in the old home neighborhood of Andella and who was acquainted with her in days gone by, went back to Coahoma County for the purpose of obtaining this deed. They found the home of Andella. Mr. Day left Shelby at her home and drove back to Tutwiler, some distance, and spent the night with his brother. Shelby spent the night at the home of Andella. During his stay, Andella expressed a desire to visit her old home and Shelby suggested that Mr. Day would be glad to take her without charge. It is not clear which one originated the idea of the trip. The next morning, Mr. Day appeared and Andella and Shelby got in his automobile. When they arrived at ''Two Try Hill'' on the outskirts of Clarksdale, Mr. Day stopped his car and got on the back seat with Andella, Shelby being on the front seat.

Mr. Day said he stopped at this particular place because he wanted privacy of conversation.

Andella says that Mr. Day then told her that her land had sold to the State for taxes and that he had procured a patent from the state thereto, but that in order to keep her from feeling badly he would give her $40 and that, not knowing anything about the facts and relying on what Mr. Day told her and thinking she had lost her land, she agreed to execute the deed.

Mr. Day denied that he told her he had a patent to the land. His version of what he said is this: "I told her the condition her land was in. It was sold to the State and the State had the title on record, and I didn't know whether any taxes had been paid on it since that time or not, that I had not gone into that phase of it, but if there hadn't there was about either nine or ten years back taxes due on it, and in order to clear that up, it was my understanding, that would have to be paid, which with the principal and the interest would amount to better than Three Hundred Dollars; and that I didn't suppose she had the money to pay that with even if she could get it back and she said she didn't, and then I asked her would she consider giving me a quit-claim deed so I would have a chance to clear it up in my own name and she said she would because that was the only way she figured she could get anything out of it. I said, 'well what would you be willing to take for your interest in it?' And she said, 'she didn't know,' and I asked her if forty dollars would satisfy her, and she said 'yes.' "

It might be further added that Mr. Day was not only armed with the prepared deed but he also had with him a copy of the record of the tax sale of 1932, certified by the chancery clerk. He said he produced and read to Andella the deed and the record of this tax sale.

He then carried her to the office of Mr. Ellis, the justice of the peace. The deed was not read to her but Mr. Ellis asked her if she understood what it was and she said she did. It was then executed by use of a mark for her

signature. Mr. Ellis taking the acknowledgment and calling in two persons as witnesses. Mr. Day paid her the $40 and she and Day and Shelby left. They proceeded to Yazoo County, Andella going to the home of her sister. She then learned that all of the taxes had been paid on the land except for the year of the sale. She promptly went to see Mr. Day and offered to repay him the $40 which he refused to accept, seeking a reconveyance to her of the land, which he refused to do. She immediately filed this bill.

Mr. Day says that he did not tell her that he had a patent to the land. Shelby says he did not hear the conversation. Mr. Ellis, who was paid by Mr. Day for his services on both trips and who was a witness for Mr. Day, said that Mr. Day told him on both trips that he had a patent to the land, and since the record does not disclose that Day saw Ellis on the second trip at any time other than the occasion on which the deed was executed, this means the second statement by Mr. Day, if made, was in the presence of Andella. The great weight of the evidence is to the effect that Mr. Day did represent to Andella that he had a patent to the land.

It might be further added that when the land sold for taxes it was valued for tax purposes at $620. The witnesses for Mr. Day valued it for agricultural purposes at $6 to $8 per acre and those of the appellant at around $12 per acre. It is clear in any view that the consideration paid was grossly inadequate. It might also be added that this court had held that tax sales for nonpayment of state and county taxes on August 1, 1932, were void. Smith v. Hendrix, 181 Miss. 229, 178 So. 819.

It is very evident that Andella understood from the acts and statements of Mr. Day, whether he so intended or not, that she had entirely lost title to her land, or that it would require the payment of over three hundred dollars to redeem it, one situation as hopeless of remedy by her as the other. Neither was correct. This woman was ignorant, did not know her rights or the facts, and had

no one to advise her. Situated as these parties were, this transaction cannot stand in a court of equity, whether based upon misrepresentation, wittingly or unwittingly made, of material fact (16 Am. Jur., pg. 456, sec. 33; Rimer v. Dugan, 39 Miss. 477, 77 Am. Dec. 687; Clark v. Lopez, 75 Miss. 932, 23 So. 648, 957; Norfleet v. Beall, 82 Miss. 538, 34 So. 328; Leach v. Hirshman, 90 Miss. 723, 44 So. 33; Caulk v. Burt, 114 Miss. 487, 75 So. 369, on sustaining suggestion of error) or upon mutual mistake of such fact (Alabama & V. Ry. Co. v. Jones, 73 Miss. 110, 19 So. 105, 55 Am. St. Rep. 488, and Hoy v. Hoy, 93 Miss. 732, 48 So. 903, dealing with mistake of law as to private legal rights and interest; Allen et al. v. Luckett, 94 Miss. 868, 48 So. 186, 136 Am. St. Rep. 605; Alexander v. Meek, 132 Miss. 298, 96 So. 101); inducing the execution of this deed.

Reversed and remanded for entry of decree in accordance herewith and accounting of rents and tax payments, etc., since the execution of the deed.