## JANE P. CLARK *v.* LOUIS LOPEZ.

1. DEED. *Execution obtained by fraud. Status quo.*

   Where there is great weakness of mind in a grantor, arising from age, sickness or any other cause, though not amounting to absolute disqualification, and the consideration given is grossly inadequate, equity will, on proper and reasonable application by the injured party, or his heirs, vacate the deed, requiring complainant to restore the grantee to the *status quo* before its execution.

2. APPELLATE PRACTICE. *Oral evidence not of record. When will not cause affirmance.*

   If the supreme court disregards the deposition of a party because the witness' mental incapacity is apparent therefrom, it will not withhold a reversal for error because the witness was also examined orally in the chancery court, and the testimony orally delivered is not of record, even if the object of the oral examination was to enable the court below, by observation, to determine the witnesses' capacity.

FROM the chancery court of Harrison county.

HON. N. C. HILL, Chancellor.

Mrs. Clark, the appellant, filed her bill in equity against Lopez, the appellee, to cancel a deed made by her to him, averring that the execution thereof was obtained for a grossly inadequate sum; that she was, at the time, weak in mind, in feeble health, easily imposed upon, poor, destitute, distressed, and greatly oppressed by her necessitous and helpless condition; that appellee, by continuous persuasion, gross fraud, circumvention and false representation as to her title and the value of the property, induced her, on the faith of such representations, to execute the deed to the property, which was actually worth four or five times as much as the appellee paid for it. The facts upon which were based the charges of fraud, imposition, circumvention, etc., were all set out in the bill. The money paid

by Lopez for the property was tendered back to him with interest. The answer of appellee denied all the material averments of the bill of complaint. Proofs were taken, among which was the deposition of Mrs. Clark, referred to in the response by the court to the suggestion of error. The decree of the court below was in favor of Lopez, and it recites the taking of the oral evidence mentioned by the court in its opinion denying the suggestion of error. Mrs. Clark appealed to the supreme court.

*E. M. Barber* and *Mayes & Harris*, for appellant.

Complainant was in very straitened circumstances, right upon the verge of being ejected from the house in which she lived, for the nonpayment of her rent. The proof is abundant that, while the appellant is not an idiot, she is of such weak mind and intellect that she is almost a complete imbecile. The land was worth five times what Lopez paid for it. Mr. Adams, in his estimable work on equity jurisprudence, sec. 183, says that a conveyance may be impeached for mere weakness of intellect, provided it be coupled with circumstances which go to show that the weakness has been taken advantage of by the other party. Mr. Story, in his Equity Jurisprudence, secs. 234–237, lays down the doctrine that where a person of weak mind, from whatever cause the weakness may arise, has assumed to contract, and the price paid is so small as to shock the conscience of an honest man, the case becomes closely allied to the contracts of idiots, persons *non compos mentis* and infants, and that equity will relieve against the fraud, and it is obvious that weakness of understanding must constitute a most material ingredient for determining whether the contract has been obtained by fraud, imposition or undue influence. Mr. Story further says (secs. 240–248) that there may be such an unconscionableness or inadequacy in a bargain as to demonstrate some gross imposition or undue influence, and where there are ingredients in the case of a suspicious character, gross inadequacy must

necessarily furnish the most vehement presumption of fraud, and lays down the doctrine that where immovable property is sold for less than one-half its value, that there was some undue influence brought to bear on the party selling, and must necessarily furnish the most vehement presumption of fraud.

In *Bunch* v. *Shannon*, 46 Miss., 525, and *Simonton* v. *Bacon*, 49 Miss., 582, our supreme court lays down the doctrine that, where one of feeble understanding enters into a contract with a person in whom he has confidence, so that he trusts to that person to do right towards him, if there is any unfairness in the transaction the inference is that it was obtained by fraud, circumvention or undue influence, and he is not bound by the contract.

In *Fitzgerald* v. *Reed*, 9 Smed. & M., 94, our supreme court says that, when the fact of an incapacity to make a legal contract is established, the contract is avoided, and that is the legal consequence, dependent on no court or judge. Inadequacy of consideration, coupled with other circumstances, such as weakness of intellect or pecuniary distress, may, in many cases, be considered as amounting to fraud, and will justify the setting aside of the contract, and it would appear that any unfairness in a transaction obtained over one of feeble mind by a person in whom he trusted, will raise the presumption that the advantage was obtained by fraud, and if the inadequacy is so great as to shock one at the injustice of the transaction, the inadequacy itself will be sufficient to establish the fraudulent character of the transaction. *Allove* v. *Jewell*, 4 Otto, 506; *Griffith* v. *Godey*, 113 U. S., 95; *Kempson* v. *Ashbee* (Eng.), L. R., 10 Ch., 15; *Fry* v. *Lane* (Eng.), 40 Ch. D., 322; 10 Am. & Eng. Enc. L., 527; Snell's Equity, 395; Story, sec. 239.

*White & Neville*, for appellee.

An examination of the record discloses the fact that this suit was not instituted until eight months and eleven days after the sale to Lopez, and then at the instance of others. The parties who instigated the suit had possession and control of the prop-

erty, and were renting it to a tenant. According to appellant's own testimony, it was at their instance that she brought this suit. They employed an attorney for her, made her bond for cost and her appeal bond. They furnished her the money to tender to appellee, which was tendered without her even knowing where it came from. This is a case in which not one single charge in the bill is sustained by the evidence. The testimony of appellant herself does not support her bill.

Complainant testified in open court, and the chancellor had ample opportunity to judge for himself of her intelligence, without resorting to the testimony of witnesses.

On the question of inadequacy of price, there is a mass of testimony, some relevant and some irrelevant. The witnesses who fixed highest values were dealing with speculative figures —the assessments all favor appellee.

We admit that if it had been shown that complainant was weak minded, and had her weakness been taken advantage of, and she had been defrauded, it would have been a case where equity would have intervened. But, in this case, it has not been shown that appellant was weak minded; it has not been shown that any advantage of any kind has been taken of her; it has not been shown that she did not receive a fair price for the property sold; it has not been shown that defendant did anything except such acts as can correctly be termed fair and honest.

There was no fiduciary relation, or even relation of friendship, shown to exist between the parties. It was a simple business transaction, in which no advantage was taken or attempted. We confidently assert that not a single allegation in the bill is supported by the proof, and that if we leave the case to be determined upon the testimony of the appellant alone, it is shown that there is absolutely no foundation for the allegation of fraud in the bill. That the bill was not filed in good faith is shown by the fact that more than eight months elapsed before its filing, during which time the property materially enhanced in value. This case is brought up on a part only of the testimony before

the chancellor, the oral proof not being made a matter of record, and in such case the presumption is always in favor of the correctness of the decree. *Anderson* v. *Williams*, 24 Miss., 684; *Steadman* v. *Holman*, 33 Miss., 550; *Balfour* v. *Mitchell*, 12 Smed. & M., 629; *Townsend* v. *Bluett*, 5 How. (Miss.), 503; *Lee* v. *Bennett*, 2 Ga., 119; *Doe* v. *Barnard*, 7 Smed. & M., 319; *Smith* v. *Hurd*, 8 Smed. & M., 682.

Argued orally by *Edward Mayes*, for appellant, and by *W. A. White*, for appellee.

WHITFIELD, J., delivered the opinion of the court.

A careful scrutiny of all the testimony in this record leaves us, after thoroughly sifting and comparing it under the light of the authorities, satisfied that the decree of the chancellor cannot be upheld. The principles on which the case must turn are clearly set forth in the case of *Allen* v. *Jewell*, 94 U. S., 508–512, and in the able and exhaustive opinion of the court of appeals in equity of South Carolina, in *Butler* v. *Haskell*, 4 Dessausure's Eq. Rep., 686–716, in which the authorities covering this field of inquiry are most learnedly reviewed. The supreme court of the United States, in the case cited, announces it as settled law that "whenever there is great weakness of mind in a person executing a conveyance of land, arising from age, sickness or any other cause, though not amounting to absolute disqualification, and the consideration given for the property is grossly inadequate, a court of equity will, upon proper and reasonable application of the injured party or his heirs, interfere and set the conveyance aside." Relief was granted in this case after a lapse of six years, and, though valuable improvements to the amount of $6,000 had been made by the purchaser. Judge Story, in *Harding* v. *Wheaton*, 2 Mason, felicitously states the rule as follows: "Extreme weakness [of mind] will raise an almost necessary presumption of imposition, even when it stops short of legal incapacity; and

though a contract in the ordinary course of things reasonably made with such a person, might be admitted to stand, yet, if it appear to be of such a nature as that such a person could not be capable of measuring its extent or importance, its reasonableness or its value, fully and fairly, it cannot be that the law is so much at variance with common sense as ·to uphold it." These are the words of an acknowledged master of equity jurisprudence, and fit into the facts of this case with peculiar force and aptness. In the case of *Butler* v. *Haskell, supra,* cases are cited (p. 690) where the inadequacy did not exceed one half; and it is said (pp. 690, 692), very pertinently, that the fact that the "bargain is hawked about" only shows the necessities of the party. Very great stress is laid in this case upon the necessitous condition of the seller, and the unequal plane upon which, in consequence of that and other features, the parties dealt. Both these observations apply strongly in the case at bar. The conveyance should be canceled upon the complainant's putting the appellee in *statu quo ante* the execution of the deed. This can be done by requiring the complainant to repay the purchase money with legal interest from the date of the deed, June 6, 1890, and all taxes or charges on the land paid by appellee since the purchase, and the amount of all permanent valuable improvements put thereon by him, if any, since·that time.

Whilst looking to the testimony on any one line of assault upon the deed, there might be ground to hesitate, yet, when the combined effect of all the proof is held steadily in mind, we have no hesitancy in reversing the decree and remanding the cause to be proceeded with in accordance with this opinion.

*White & Neville,* for appellee, after the delivery of the foregoing opinion, presented to the court a suggestion of error, urging that an affirmance should be had because the oral testimony of Mrs. Clark, appellant, did not appear of record.

WHITFIELD, J., delivered the response to the suggestion of error.

The well-settled rule that affirmance must ordinarily follow when the bill of exceptions does not certify to us all the testimony, has no application in this case, for two obvious reasons. First: Mrs. Clark's deposition is in the record, full and complete on every issue made by the pleadings. If the oral testimony was in conflict with this, it merely showed no decree should be based on her testimony. We discarded her testimony absolutely, because it was manifest, from her answers, that she answered without the slightest degree of intelligence. Second: If, as is intimated, the purpose of the oral examination was to exhibit her before the chancellor, so that he could decide as to her mental capacity from personal observation, it is to be said that that matter was far more safely to be determined from the testimony of witnesses who had known her always, than from any such casual examination and observation. Her deposition, on its face, conclusively demonstrates want of mental capacity, and, if the oral examination had an opposite tendency, it simply establishes the wisdom of doing precisely what we did do—that is, of discarding her testimony altogether, and resting the decree on the testimony of witnesses *compotes mentis.*

*Suggestion overruled.*