NELSON WEBB, SR., ET AL. *v.* NELSON WEBB, JR., ET AL.

[54 South. 840.]

1. DEEDS. *Fraud. Confidential relation. Cancellation. Consideration.*

Where illiterate parents believing that they were only executing a deed of trust on their lands to raise money to pay off a lien thereon, conveyed their lands to a son, the only consideration being that the son assumed the incumbrance which was much less than the value of the land, and immediately on discovering the fraud which had been perpetrated upon them took steps to cancel their deed, they were entitled to relief.

2. DEEDS. *Confidential relations.*

In such case on account of the confidential relations between the parties the court should scrutinize the transaction more closely than if the transaction had been between strangers.

3. CANCELLATION OF DEED. *Prior incumbrance.*

Where a grantee obtaining a deed by fraud, executes a deed of trust to a third party to obtain money to pay off a prior incumbrance on the land conveyed to him, the grantor as a condition to a decree setting aside the deed to the grantee and the deed of trust, must pay to the third person the amount of the loan so used.

APPEAL from the chancery court of Rankin county.
HON. SAM WHITMAN, JR., Chancellor.
The facts are fully stated in the opinion of the court.

*J. R. East, Wm. Buchanan & Patrick Henry,* for appellants.

Appellants submit the following authorities in support of their contention that they were entitled to the relief prayed for.

(1) Fraud vitiates everything which it touches. The burden of proof is ordinarily on the complainant, to show by a simple preponderance of evidence that the instrument was obtained by fraud, but the burden shifts when there is either a gross inadequacy of price, or when there is any inadequacy of price, coupled with confidential relations, or any disability. 14 Am. and Eng. Ency. Law, 2d Ed., p. 194, and cases there cited. The burden is on the grantee to prove the transaction fair. *Yarborough* v. *Harris* (Ala.), 52 So. Rep., No. 14, p. 997; *Hold* v. *Agnew,* 67 Ala. 360; *Pride* v. *Baker,* 64 So. Rep. 329; *Hightower* v. *Huber,* 26 Ark. 611, 76 Miss. 560, 82 Miss. 538.

(2) An absolute deed will be held to be a mortgage, if it clearly appear, that it was designed as a security for money. *R. J. Littleworth, Supt.,* v. *Jane F. Davis et al.,* 50 Miss. Rep. 403.

The old man, Nelson Webb, under the testimony, was twenty-one years old when the war was on, that he cannot read or write, and it is clear he was over-reached by his designing sons, he was made to feel that his homestead was in jeopardy (his mule and cotton having already been seized by Mr. Berry) by the false statements of Nelson, Jr., that Mr. Berry had taken up the bank indebtedness, and was going to sell him out right away, and that there was no time to wait, that it must be fixed right now, thus frightening the old negro into an abandonment of his visit to Brandon to see his lawyer, Mr.

East, and falsely holding out the idea that he was going to protect his homestead and save it for him. "Such a transaction between parties sustaining such relations cannot be sustained, in a court of equity, unless the proof leaves the transaction free from fraud, and undue influence. *Norfleet* v. *Beall, supra.* We refer the court to the case of *Jas. Durr et al.* v. *J. B. Massingale et al.,* 14 Miss. 500, decided by this court at the March term, 1910.

*A. J. McLaurin, Jr.,* for appellee.

The burden of proving that appellees fraudulently obtained signatures of appellants to the warranty deed is upon appellants. *Taylor* v. *Buttrick,* 52 Am. St. Rep. 530; *Halls* v. *Thompson,* 1 Sm. & M. 443.

In the case last above cited Chief Justice Sharkey in delivering the opinion of the court says at page 90, "On the whole then, although there may be some doubts as to the fact of concealments (and there is certainly no more than doubt) the solemn contract of parties cannot be set aside on such uncertain grounds; this should be done on clear proof."

The burden of proof then rests upon appellants to prove the allegations of their bill not only by a mere preponderance of evidence, but by such evidence as would be considered clear proof.

In 6 Cyc., at page 336, we find: "The cancellation of an executed contract is an exertion of the most extraordinary power of a court of equity which ought not to be exercised except in a clear case and never for an alleged fraud unless the fraud be made clearly to appear." And the cases there cited fully bear out the proposition.

No fiduciary relation exists between appellants and their two sons as to throw the burden of proving the *bona fides* on appellees. The nearest approach to claiming the existence of such relation is found in the following, taken from appellant's brief: "The law we submit throws around appellants the aegis of its protection

against the false and fraudulent subtleties and machinations of the sons." The law throws the aegis of its protection around appellants against the fraud of every one, but does not take allegations of fraud as proof of it.

The mere fact of a relationship of parent and child shown to exist does not show any fiduciary relationship; whether or not such relationship exists depends on the facts of each case. *Studybaker* v. *Cofield,* 61 S. W. 246, 159 Mo. 596.

MAYES, C. J., delivered the opinion of the court.

On the 24th day of April, 1909, the complainants were the joint owners of a tract of land containing about one hundred and fifty acres. On the above date they executed a deed in trust on same for the sum of about five hundred and forty-eight dollars in favor of the Citizens' Bank of Brandon. It seems from the testimony that during the year 1909, and previous to this controversy, somewhat more than sixty dollars was paid on this deed in trust by complainants to the Citizens' Bank. On the 8th day of November, 1909, Nelson Webb, Sr., and his wife, Julia Webb, complainants and appellants, executed a deed to all of the real estate to their son, Nelson Webb, Jr. The deed is a simple warranty deed, reciting a consideration of five hundred and thirty-eight dollars, which the deed purports to have been paid, so far as anything to the contrary appears on the deed. On the 30th day of December, 1909, and only a few weeks afterwards, Nelson Webb, Sr., and his wife, Julia, filed a suit against their son, Nelson Webb, Jr., Henry Webb, and W. G. Cooper, the object of which was to cancel the deed made by Nelson Webb, Sr., and his wife, to Nelson Webb, Jr. The reason Cooper was made party to the suit was that, immediately after Nelson Webb, Jr., obtained the deed to the land in question, he gave a deed of trust on the land to W. G. Cooper for the sum of four hundred and forty-one dollars and ten cents. Henry Webb, the other

son, is made a party, because it is alleged that the transaction was fraudulent and Henry participated in it. The trust deed in favor of Cooper was executed on the 10th day of December, 1909, and was executed by Nelson Webb, Jr., and his wife, Sarah Webb. In the bill seeking to cancel the deed made to Nelson Webb, Jr., the complainants offer to pay into court the amount of money necessary to settle what may be due under the deed in trust to the Citizens' Bank.

The bill charges that the sons, Nelson and Henry, entered into a conspiracy for the purpose of defrauding complainants of the property in question, and in pursuance of this conspiracy falsely and fraudulently represented that one R. G. Berry, a merchant at Florence, had bought from the Citizens' Bank the trust deed held by the bank; that, if the complainants would give them a trust deed on the land, they would get the money to take up the indebtedness; that they could get the money from a negro bank in Jackson at four per cent for a short time, and five for a year. It is charged in the bill that complainants are old and ignorant, and unable to read and write; that the defendants Nelson and Henry are their sons; that these sons represented that their home was in jeopardy on account of Berry's purchase of the trust deed from the bank, and having confidence in their sons; and, believing their home in jeopardy, that they signed an instrument at the request of Nelson Webb, Jr., which they believed to be a deed in trust, believing at the time that they signed only a trust deed for the purpose of raising the money to pay the claim held by the Citizens' Bank. Shortly afterward they learned that the instrument signed was not a trust deed, as had been represented by their sons, but was in fact a deed to their son, Nelson Webb, Jr. The bill charges that complainants never intended to sign a deed, did not know that they were signing a deed, and would not have signed the deed for so inadequate a price, as the land was easily worth

fifteen hundred dollars.  The bill charges that the debt
to the Citizens' Bank has been paid; that Nelson Webb,
Jr., claims to be the owner of the land, and had executed
the trust deed to W. G. Cooper.  It is charged that, as
soon as the complainants were advised of this, they
charged Nelson Webb, Jr., with the fraud, and tendered
a sufficient amount of money, through their attorneys,
to pay the amount of the indebtedness, and demanded a
reconveyance of the land, which the son refused to make.
All of the defendants answered, and denied all the sub-
stantial allegations of the bill.  It is shown by the answer
that the amount secured by the trust deed and owing to
the Citizens' Bank was paid, and that the money to dis-
charge the debt was obtained by Nelson Webb, Jr., from
W. G. Cooper; and that the trust deed executed by Nelson
Webb, Jr., and wife, on the property in question, to
Cooper, was for the purpose of securing money to dis-
charge the deed in trust executed by Nelson Webb, Sr.,
and his wife, on the land, in favor of the Citizens' Bank.

It is manifest from this record that this whole trans-
action, so far as the sons are concerned, is a swindle and
a fraud.  The only consideration paid by them to this
old couple was simply the assumption of the debt due
from their parents to the Citizens' Bank, and for this
getting a tract of land much more valuable than any
amount it would take to pay the debt on it.  Complain-
ants say that at the time they made the deed to the son
they thought they were only executing a deed in trust
to raise money to pay the bank, and every fact and cir-
cumstance in the case indicates that this is true.  At the
date of the transaction they owned and were living on
the property.  It is true that there was a mortgage on it,
but the holder thereof seemed satisfied with the security
held.  Mr. Cooper did not hesitate to loan enough on the
property to these fraudulent grantees to pay off the debt
due the bank or at least nearly enough, thus showing
that the property was worth much more than the debt.

Everything that this old couple could have gotten out of the transaction, so far as this testimony shows, and the circumstances strongly indicate, was to be turned out of their home for the assumption of the debt on same by the son, when the home itself was more than ample security for the debt. The son had not given one dollar to either of these parents for this deed. According to the testimony of some of the witnesses, the property is worth nearly three times as much as the debt; according to others, it is worth only a few hundred dollars more; but no witness states the value of the property to be less than the debt. Every fact and circumstance in the case proves fraud.

Considering the relationship of the parties, this transaction is to be even more closely scrutinized than if it had taken place between strangers. The value of the property is in excess of the debt, the deed was procured to be made by the sons of the complainants, these sons stood in a confidential relation toward their parents, and it was easier for them to play upon their credulity and to impose upon them than it would have been if by a stranger. Immediate steps were taken to cancel the deed in question.

Under the facts of this case, the complainant's bill should have been sustained, after requiring them to pay to Cooper whatever is due under the deed in trust held by him; the money having been used to pay off the amount due the Citizens Bank. The deed made to the son is no more than a voluntary deed, without consideration to support it. The parents gave all; they got nothing.

We think the decision of the chancellor on the facts of this case is manifestly erroneous. It should have taken but slight testimony, in view of all the circumstances, to cause the chancellor to set aside this transaction; and, because he did not, the case is reversed and remanded.　　　　　　*Reversed and remanded.*