NUBBY *et al. v.* SCOTT *et al.*

(Division A. Sept. 11, 1939. Suggestion of Error Overruled Oct. 23, 1939.)

[190 So. 911. No. 33547.]

**Thomas E. Rhodes,** of Washington, D. C., and **Nate S. Williamson** and **Harold W. Davidson,** both of Meridian, for appellants.

W. W. Pierce, of Jackson, and **Richardson & Sanford**, of Philadelphia, for appellees.

Argued orally by **Thomas Rhodes** and **Nate S. William-son** for appellant and by **W. W. Pierce** for appellee.

**McGowen, J.,** delivered the opinon of the court.

By bill and supplemental bill, Lilly Nubby (nee Tubby) and Odie Moore sought to recover from Lonie Scott, Marshall Scott and W. W. Pierce, Trustee, a one-half interest in all of the estate which Lonie Scott, through W. W. Pierce, as her trustee, had collected from the estate of her father, and from the United States Department of the Interior. Lonie's property consisted in cash, bonds, and lands in Oklahoma, and exclusive of the lands, was of the approximate value of $113,000.

Lilly's claim was based on two instruments introduced as exhibits, one an assignment made to her by Lonie at the Indian Agency in the year 1926, the substance of which is set out as an exhibit; the other a formal com-

bination deed to a one-half interest in lands in Oklahoma, and an assignment of a one-half interest in all Lonie's property received from her father's estate. This combination deed and assignment was signed by Lonie and her husband, Marshall Scott, and was witnessed, acknowledged and recorded in the Chancery Clerk's Office in Neshoba County. There was also exhibited with the bill a declaration of trust by Lonie and her husband, conveying all of Lonie's said property in trust to W. W. Pierce, as trustee, and dated April 30, 1931.

Lonie, her husband and Pierce first filed a plea to the jurisdiction of the court, setting up the appointment of Pierce as guardian of Lonie by the probate court of Carter County, Oklahoma. The record and oral evidence was considered by the court, and the plea was overruled. There is no cross-appeal by Pierce, et al. The answer denied the material allegations of the bill, and set up that Lonie was mentally incompetent to execute the deed and assignment, and had been procured by undue influence under the plan, and through the connivance, of Odie Moore. The bill alleged and the answer admitted that Lilly, Lonie and Moore were "full-blood" Choctaw Indians, residents of Neshoba and Leake Counties, Mississippi.

The court below dismissed the bill of Lilly and Odie Moore, and appeal from that decree is prosecuted here.

These historical and undisputed facts we deem essential to an understanding of the case: In 1900 Hickman Willis lived in Neshoba County, Mississippi, and in that year consummated a tribal marriage with Lilly Nubby, and Lonie was the issue of that marriage. Some years later he removed to Oklahoma, where by government allotment he acquired lands which, from oil royalties, made him the owner of quite a large estate. Hickman contracted several marriages in Oklahoma; and in that state as well as in this, he served terms in the penitentiary. He died in July, 1925; and, in due course, proceedings were instituted to determine heirship to his rather large estate, in the County Court of Carter County, Oklahoma.

Lilly employed as her attorney Judge Roger Wilson, now deceased; subsequently Lilly and Moore also employed him. This attorney employed Ott and Adams, Attorneys, of Ardmore, Oklahoma, to assist him in establishing the claims of Lilly and Lonie as wife and daughter, respectively, of Hickman Willis.

The county court held that Lilly was not entitled to an interest in Willis' estate, but sustained the claim of Lonie, as a daughter and heir, with other Indian claimants. Subsequently, the case was appealed to the District Circuit Court, where the decree of the county court was affirmed, Lilly having joined with others in that appeal. From the circuit court, the case was appealed to the Supreme Court of that state, which appellate court handed down its opinion on October 18, 1927, In re Estate of Willis, 129 Okl. 155, 265 P. 1064, disposing of the several claims, and holding that Lonie was the daughter of Hickman and Lilly, and was entitled to share in his estate as an heir, on the ground that the marriage between Hickman and Lilly in 1900 was a valid and binding marriage, under the Mississippi law. By that opinion, Lilly was excluded as an heir, because she had not appealed. See In re Estate of Willis, 129 Okl. 155, 265 P. 1064.

The declaration of trust was approved by the probate court of Carter County, with Pierce, Lonie and her husband personally in that court; and Pierce was appointed trustee, at which time all the estate of Hickman Willis was being administered in that court.

Lilly and Moore assign and argue many points for reversal of the decree in the court below; but, as we are of opinion that the case must be affirmed on one ultimate point, we shall not state those points, or all the facts of the case.

We are of opinion that Lonie Scott was incompetent to execute the deed and assignment relied upon by the appellants. This instrument recited two considerations: (1) The assignment of 1926, allegedly executed at the

Indian Agency. This agency assignment, as set forth, in substance stated no valuable or other consideration. It is now said that the consideration therefor was the agreement of Lilly not to appeal.

The court found as a fact that at the time this Agency agreement was entered into, if any such was ever entered into, the county court had just rendered an adverse decree to Lilly's claim; and that after said agreement she appealed to the circuit court. The court further found that the 1926 agreement had not been established, and further, that the weight of the proof was that the paper signed at the Indian Agency in January, 1926, was an assignment to Roger Wilson for services as attorney in the Oklahoma ligitation; and that there is no evidence that such paper, if executed, was ever delivered to Lilly, or to anyone for her. That Lilly appealed to the circuit court after the date they claim the paper was executed is fully sustained by the testimony of Earl Richardson, and by the cross-examination of Lilly Nubby. These findings of the Chancellor are warranted by the evidence, and we cannot say they are manifestly wrong; on the contrary, he seems to have reached the logical conclusion, from all the facts. At best, there was but a conflict in the evidence.

The deed and assignment executed by Lonie to Lilly in 1933 recited no other valuable consideration; the other recited consideration is love and affection of the grantor for the grantee. In other words, it must stand if upheld as a voluntary gift of lands, cash and bonds of one half the value of from $45,000 to $75,000 by the daughter to the mother.

This record shows that Lonie did not know that one-half of this estate conveyed would immediately pass, by her deed, to Moore thirty per cent, and to the attorney who drew it twenty per cent. She did not know, or have any conception of the fact, that she owned lands in Oklahoma, or the royalties thereon. She was a housewife, with a husband and children; she could speak with other

Indians, conversing in Choctaw; but she could not speak, read or write English at all—never traded at the stores nor transacted any business for herself. The superintendent of the Indian Agency at Philadelphia a disinterested witness, testified that she had the mind of a child four years of age; that through years of association at the Agency they could not make her understand the necessary information and dealings, which, as the representative of the government, he tried to impart to her in her own interest. The mere fact that this deed was read to her in her native language by an Indian woman, in the presence of a number of witnesses, imparted no more information to her, weak-minded and ignorant as she was, than would reading of the Koran to a Kangaroo. We are fully persuaded that she was incompetent to execute this deed and assignment, and that the mere formal legal execution thereof is not binding upon her or her trustee. The deed was executed in the presence of Lilly Odie Moore, the beneficiary attorney and his wife, and a witness, Hardy, who was carried to Lonie's home for that purpose.

The rule in this state is to be found in the case of Clark v. Lopez, 75 Miss. 932, 23 So. 648, 649, 957, wherein Judge Whitfield said: "The principles on which the case must turn are clearly set forth in the case of Allore v. Jewell, 94 U. S. [506] 508-512 [24 L. Ed. 260], and in the able and exhaustive opinion of the court of appeals in equity of South Carolina, in Butler v. Haskell, 4 Desaus. [651] 686-716, in which the authorities covering this field of inquiry are most learnedly reviewed. The supreme court of the United States, in the case cited, announces it as settled law that 'whenever there is great weakness of mind in a person executing a conveyance of land, arising from age, sickness, or any other cause, though not amounting to absolute disqualification, and the consideration given for the property is grossly inadequate, a court of equity will, upon proper and reasonable application of the injured party, or his heirs, interfere, and set the conveyance aside.' Relief was granted in this case after a

lapse of six years, and, though valuable improvements, to the amount of $6,000, had been made by the purchaser, Judge Story, in Harding v. Wheaton, Fed. Cas. No. 6,051, 2 Mason 378, felicitously states the rule as follows: 'Extreme weakness (of mind) will raise an almost necessary presumption of imposition, even when it stops short of legal incapacity; and though a contract, in the ordinary course of things, reasonably made with such a person, might be admitted to stand, yet if it appear to be of such a nature as that such a person could not be capable of measuring its extent or importance, its reasonableness or its value, fully and fairly, it cannot be that the law is so much at variance with common sense as to uphold it.' '' See, also, Austin v. Von Seutter, Miss., 139 So. 174.

We have left out of consideration the fact that this government has undertaken to throw about members of the Indian race its strong arm of protection, because of the generally recognized fact that the members of the race are easy victims of the wiles and persuasions of the wary and intelligent, as well as their inordinate desire to gratify at any cost their immediate wishes or whims; but have treated the case on the broad principle of equity herein set forth.

We are of opinion that the grantor, Lonie, is shown to have had no conception of the property conveyed or of its value, and it was a voluntary gift so far as she was concerned of thousands of dollars to strangers.

Moore was to receive from Lilly thirty per cent of the property conveyed as a attorney-in-fact. He was not an attorney at law. The attorney at law who drew the deed, and his wife who was a witness to its execution, did not testify in this case, but he afterwards cancelled his contract. The effect of Lonie's deed and assignment was to strip her of the assurance of a comfortable living for herself and family as provided in the Oklahoma trust agreement naming Pierce as trustee, without the knowledge of her trustee.

Affirmed.