## PHILLIPS *v.* FORD

No. 43116 June 8, 1964 164 So. 2d 908

*Black & Boykin,* Carrollton; *Barnett, Montgomery, McClintock & Cunningham,* Jackson, for appellant.

*J. W. Conger,* Winona, for appellee.

RODGERS, J.

This is an action brought in the Chancery Court of Carroll County by Earlie P. Ford, devisee in the will of Henrietta Williams, against Kyzer Phillips, to set aside three deeds given him by Henrietta Williams a short time before her death. The chancellor held these deeds were obtained by undue influence and cancelled them. The appellant, grantee in the deeds, has appealed, and complains that there is no evidence to sustain the chancellor's finding that there was a confidential relationship between Henrietta Williams and Kyzer Phillips, and that the overwhelming weight of the evidence is contrary to the facts found to exist by the chancellor in his opinion.

The evidence shows that in 1957 Henrietta Williams, a Negro widow, eighty years old, lived alone on a 200-acre farm near Carrollton, Mississippi. She was feeble and unable to attend to her stock, bring in firewood and do the necessary chores about the farm. Her feet were crippled so that she could not wear shoes, and her feet and legs were swollen. She stayed in bed most of the time.

The appellant lived on a farm nearby, in which he claimed to have an interest. He separated from his wife and claimed to have lost his farm. He then moved in the house with "Old Aunt Henrietta Williams." He sold one of her cows, and said he gave her the money. He sold her timber, and admitted he kept the money. He obtained all of the money she had in the bank and claimed she gave it to him. He obtained a deed to forty acres of her land, and finally obtained deeds to all of her land. One of the deeds conveying 160 acres has contained therein the following paragraph: "This land is valued at the price of $1800.00 and is conveyed to

Kyzer Phillips under contract that he is to room, board, provide for and care for the Grantor for her lifetime, and is to bear all cost of her final illness and all funeral expenses." The appellant, however, denied that he agreed to provide the grantor with room and board. In short, he took everything Henrietta Williams had and all he said she received in return was "she got a living out of it." He claims he got the cotton crop he raised on the land but that she had no interest in it. The appellant was not a relative of Henrietta Williams. In explaining why he went to this old woman's home, he said "she wanted my help, she said she didn't want no money, and she changed the deed." He said Henrietta Williams had no business to attend to "But me to just go there and live with her and I would come get groceries and kept her wood and everything that she wanted and she didn't have anything to do but just sit there at home. She told me that she had a better time then than she had when her husband was living." He testified she gave him money to buy whatever she needed when he did not have money. Finally, he said he had nothing to do with her cattle. "I couldn't handle her business and see after my own."

Earlie Ford took her sister Henrietta Williams to her home and sent for her niece to aid in caring for this old woman in her last illness. Henrietta Williams sent her niece to the bank to get some money for her use and it was discovered that her deposit had been withdrawn by Kyzer Phillips. She then sent for a lawyer to make her will so that her sister could have her land for taking care of her and pay the doctor. She made a will leaving her property to her sister.

The testimony shows that Henrietta Williams was old and sick when she made the deeds to Kyzer Phillips; that she had a "changeable mind" and "her mind was absent." Another witness said "She didn't appear like her mind was too good." A neighbor who had worked

her land said "She told me one thing two or three times sometimes" and again she said "I though the reason she was not in her right mind the way she talked to me. That is what I thought."

The lay witnesses for both sides testified to the mental condition of Henrietta Williams, giving their opinions as if they were expert witnesses, and since there was no objection to this testimony, it is a part of the record on appeal to this Court. Some of the witnesses for the defendant, appellant here, had an interest in the outcome of the proceedings with reference to the land involved. One witness who went with appellant to obtain one of the deeds had a lien on cattle belonging to appellant, and as soon as the deed was obtained, the land was immediately hypothecated to the bank. This witness said "I just already had it (a trust deed) on the cattle and things and when this deal was made I decided to get the bank to take it over and pay me out."

The chancellor was of the opinion that the evidence showed a fiduciary relationship existed between Henrietta Williams and Kyzer Phillips, and that the burden of proof was upon Kyzer Phillips to show that the deeds were obtained from her in good faith; that in view of the mental and physical conditions of grantor, and in view of the fact that the appellant admitted he did not pay any consideration for the property, he failed to meet the burden cast upon him, and the deeds were therefore cancelled.

The general rule on this subject is stated in 26 C. J. S., Deeds, § 62 (3) b., p. 769:

"A deed secured by influence which was undue as applied to a mentally weak grantor will be invalid, as where age and infirmity combine with inequitable circumstances to show undue influence; and, where the maker of a deed is so reduced by mental and physical weakness as to become the mere passive agent of the

dominating will of another in executing the instrument, it may be regarded as the product of undue influence.

"Wherever, as a result of age, sickness, or other cause, there is a great weakness of mind, not amounting to total incapacity, in a person executing a conveyance, and it appears that there was either no consideration therefor or a grossly inadequate one, the conveyance may be set aside by a court of equity on a proper and seasonable application made either by the injured person, or his representatives, or heirs; but a deed will not be set aside as having been obtained by undue influence merely because of mental weakness of the grantor, unless it is shown that his will was overpowered. * * *"

The textwriter in 16 Am. Jur., Deeds, § 38, p. 461, has this to say: "Whether such improper influence was exercised must usually be inferred from the facts and circumstances of the particular case, such as the situation of the grantor and his relation to others, his condition of health and its effect upon body and mind, his dependence upon, and subjection to, the persons claimed to have influenced him and their opportunity to wield such influence."

Again it is said in § 402, p. 665: "Where a presumption of undue influence is cast upon the grantee in a deed because of a confidential relationship existing between him and the grantor, the burden of repelling such presumption is cast upon the grantee. * * * It is sometimes stated that this burden must be met by satisfactory evidence or evidence that the transaction was in good faith and was equitable and just between the parties."

This Court, in the case of Jamison v. Jamison, 96 Miss. 288, 51 So. 130, had before it the question of undue influence in a will case, and quoting from the case of Blackman v. Edsall, 17 Colo. App. 429, 68 Pac. 792, we said "The chief complaint and contention of the proponent is that the evidence presented, and upon

which the jury based its verdict sustaining its charge of undue influence, was insufficient, by reason of its lacking that affirmative and positive character which is claimed to be necessary. It follows, from the very nature of the thing, that evidence to show undue influence must be largely, in effect, circumstantial. It is an intangible thing, which only in the rarest instances is susceptible of what may be termed direct or positive proof. The difficulty is also enhanced by the fact, universally recognized, that he who seeks to use undue influence does so in privacy. He seldom uses brute force or open threats to terrorize his intended victim, and if he does he is careful that no witnesses are about to take note of and testify to the fact. He observes, too, the same precautions if he seeks by cajolery, flattery, or other methods to obtain power and control over the will of another, and direct it improperly to the accomplishment of the purpose which he desires. * * * Only general rules concerning the amount and character of evidence required to establish undue influence in the execution of a will can be laid down. As to what is sufficient must depend upon the facts and circumstances of each particular case. These general rules have been stated and restated in many hundreds of different cases in the courts of every jurisdiction considered authority in this country. Different language is used by the different courts; but one main, underlying principle, whatever the phraseology, is found in all, and that is that the evidence required to establish it need not be — indeed, cannot be — of that direct, affirmative, and positive character which is required to establish a tangible fact. The only positive and affirmative proof required is of facts and circumstances from which the undue influence may be reasonably inferred.''

 ██ We are of the opinion that the foregoing quotation in the *Jamison* case applies with equal force to undue influence in the procurement of a deed. It is

apparent from the testimony in the instant case that there is ample evidence from which the chancellor could base his opinion that a fiduciary relationship existed between the appellant and the deceased, Henrietta Williams, and the burden of proof was upon appellant to show that the deeds were obtained in good faith. See Leech v. Hirshman, 90 Miss. 723, 44 So. 33.

■■ ■ We are also of the opinion that the appellant did not show that the deeds were obtained in good faith from Henrietta Williams, particularly in view of the fact that no consideration was given, and in view of the fact that he denied that he had agreed to support her in accordance with the statement shown in the deed. The chancellor cited the following Mississippi cases which we believe are applicable here: Hickey v. Anderson, 210 Miss. 455, 49 So. 2d 713; Clark v. Lopez, 75 Miss. 932, 23 So. 648; Webb v. Webb, 99 Miss. 234, 54 So. 840; Nubby v. Scott, 186 Miss. 309, 190 So. 911; Bourn v. Bourn, et al., 163 Miss. 71, 140 So. 518; Ham v. Ham, 146 Miss. 161, 110 So. 583; and Puryear v. Austin, 205 Miss. 590, 39 So. 2d 257.

We have reached the conclusion, for the reasons above set out, that the decree of the chancery court should be, and is, hereby affirmed.

Affirmed.

*Lee, C. J., and McElroy, Ethridge and Patterson, JJ.,* concur.