JONES, Justice.
Suit was filed in the Chancery Court of the Second Judicial District of Hinds County seeking to cancel a certain contract of sale executed by Ollie Ervin in favor of appellant, H. B. Patterson. The chancery court cancelled the instrument, from which decree this appeal is taken. We affirm.
On September 25, 1967, Ollie Ervin executed a memorandum of sale and purchase of real estate, said agreement consisting of a legal size sheet of paper, on one side of which was printed a large number of provisions, and having on its back, a typewritten page containing other provisions regarding said purported sale and purchase.
Ollie Ervin owned 240 acres in Hinds County. The purported agreement provided the purchase price of the property was $24,000 ($100 per acre) to be paid in cash. There were many provisions in this form, such as assumption of first mortgage, assumption of second mortgage, assumption of third mortgage, and mortgage for balance of purchase price. It also provided for the payment of taxes for the year 1966 by the seller. It had a blank for the insertion of insurance; it had a blank for insertions regarding the title, and in the blank was inserted a “general warranty deed from reputable attorney.” It also provided that the seller should have ten days to furnish an abstract opinion, and the buyer would have five days to examine same and the seller then have three days to ascertain if defects pointed out could be cured and then have three days in which to consummate the sale. There was a place for the form of the deed; one for special liens against the property; one for street paving; one for sidewalk, curb, and gutter; one for sewerage ; a provision as to when possession was to be delivered, and a deposit by the buyer as earnest money. It has special provisions beginning on the first page, and including additional provisions on the back thereof, providing that within thirty days after the closing of Isaac Ervin’s estate (Ollie Ervin’s husband) by final decree of the chancery court, the sale would be consummated and closed. It had a provision that the purchaser would, prior to closing, have the property surveyed and the conveyance adjusted in accordance with the acreage shown by the survey.
It was charged that the complainant (Ollie Ervin) at the time of the execution of the agreement was feeble in mind and body and unaware of the value of lands. Further, the defendant was a well educated business man owning a home and farm near that of the defendant and thoroughly familiar with the value of the Ervin property and other lands in the immediate vi *565 cinity. It was further charged that on the morning of September 25, 1967, the appellant came by the home of Ollie Ervin and took her and her aged and ignorant sister and brother-in-law to the office of the attorney where the said instrument was executed. It was further alleged that at the time of the execution of said instrument, the property was worth in excess of $300 per acre and that the consideration, paid or agreed to be paid was grossly inadequate; that at said time Ollie Ervin, as stated, was extremely feeble in mind and body and had no knowledge respecting the value of said land and no independent advice respecting the value of the land, nor respecting the meaning and effect of the document which she was signing; that she did not realize, and was not capable of realizing or understanding, the meaning and import of said document, nor its extent and importance. There was never any meeting of the minds of the parties, and the said alleged instrument was void and the complainant was entitled to have the same cancelled.
Appellant filed an answer and cross-bill admitting that Ollie Ervin was old but denying that she was ignorant and feeble in mind and body and unaware of the value of her lands. By the cross-bill, specific performance of the instrument was sought. A conservator was appointed for Ollie Ervin and an answer to the cross-bill was filed by the conservator.
The evidence as to the mental condition of Ollie Ervin was conflicting. A number of laymen testified that in their opinion, she was incompetent. Two doctors testified that she was incompetent on the day of the transaction. Defendant introduced witnesses to the contrary.
Witnesses for the appellant asserted that Ollie Ervin talked to them after the transactions and said she had sold the land. Witnesses for the appellee testified to the contrary that she told them she had not sold the land but had signed something which gave appellant the right to bid on the land. Two witnesses for the appellee testified that they were requested to go to the lawyer’s office with her on the day the papers were signed, but refused to go because of her condition and because she did not know what she was doing.
The testimony as to the value of the land was also conflicting. One witness for the appellee (an appraiser) testified the land should bring $250 to $350 per acre.
The appraiser for the defendant valued the property at $165 per acre. - It was about three or four miles from the town of Raymond with direct access to two public roads recently proposed to be improved.
On the evidence, the chancellor found the price offered was shockingly inadequate and that at the time of the purported signing, Ollie Ervin was suffering from great weakness of mind because of age, hardening of the arteries, and other illnesses, and that she did not understand the import of her act. In his opinion, he noted that the lowest value of an estimate of the land was $165 per acre and that at $165 an acre, the difference between what she was offered and such value would have been $15,600 more and that the $100 per acre was $150 per acre less than the minimum of $250 placed by another witness or a total of $36,000 less. A decree was entered accordingly cancel-ling the instrument and dismissing the cross-bill.
Appellant assigns as error that the court erred in finding that the price offered for the land was shockingly inadequate and that at the time of the signing Ollie Ervin was suffering from great weakness of the mind and did not understand the import of her act. We cannot say that the court was manifestly wrong in its holding as to the mental capacity of the ap-pellee. Nor can we say the court was manifestly wrong in its finding as to inadequacy of price.
Appellant cites cases where the question of inadequacy was connected with foreclosure sales and cases where the law *566 required a finding that the inadequacy and price was such as to shock the conscience. As to inadequacy of price in connection with weakness of mind, the test is different as shown by Clark v. Lopez, 75 Miss. 932 at 936-937, 23 So. 648 at 649 (1898) as follows:
The principles on which the case must turn are clearly set forth in the case of Allore v. Jewell, 94 U.S., at pages 508— 512, [24 L.Ed. 260] and in the able and exhaustive opinion of the court of appeals in equity of South Carolina in Butler v. Haskell, 4 De Saus.Eq. p. 686-716, in which the authorities covering this field of inquiry are most learnedly reviewed. The supreme court of the United States, in the case cited, announces it as settled law that “whenever there is great weakness of mind in a person executing a conveyance of land, arising from age, sickness, or any other cause, though not amounting to absolute disqualification, and the consideration given for the property is grossly inadequate, a court of equity will, upon proper and reasonable application of the injured party, or his heirs, interfere, and set the conveyance aside.” Relief was granted in this case after a lapse of six years, and though valuable improvements, to the amount of $6,000, had been made by the purchaser. Judge Story, in Harding v. Wheaton, 2 Mason, 378, Fed.Cas.No.6,051, felicitously states the rule as follows: “Extreme weakness [of mind] will raise an almost necessary presumption of imposition, even when it stops short of legal capacity; and though a contract, in the ordinary course of things, reasonably made with such a person, might be admitted to stand, yet if it appear to be of such a nature as that such a person could not be capable of measuring its extent or importance, its reasonableness or its value, fully and fairly, it cannot be that the law is so much at variance with common sense as to uphold it.” These are the words of an acknowledged master of equity jurisprudence, and fit into the facts of this case with peculiar force and aptness.
This is still the rule in Mississippi. McElveen v. McElveen, et al., 233 Miss. 672, 103 So.2d 439 (1958).
The appellant further assigns as error the action of the court in sustaining the objections to the testimony of Honorable Hugh Gillespie, Jr., attorney, as to the mental condition of appellee at the time of the signing of the instrument in question.
This objection was made on the ground that the said attorney had represented Ollie Ervin in a matter prior to that day and that his testimony necessarily would be based upon what he had learned in the other representation. Whether this objection should have been sustained or not, we think the error, if any, is harmless. On the date of the signing of the instrument Hugh Gillespie, III, an attorney; appellee’s sister, Josie Moore; and her brother-in-law; the attorney’s secretary, Mrs. Carolyn Mellon together with the wife of Hugh Gillespie, III were present at the time the instrument was executed. Hugh Gillespie, III was permitted to testify and included in his testimony were acts and statements of his father, Hugh Gillespie, Jr. As to what happened at the time the paper was signed, four people testified, including Hugh Gillespie, III, his secretary, his wife, and the appellant. There were, as stated, six or seven persons present and four testified. It was not shown what his testimony would be, if admitted, and if his testimony had been admitted and was favorable to appellant, it could have been cumulative only.
The appellant also assigns as error the refusal by the court to allow one of defendant’s witnesses, Mrs. James Chapman, to testify as to the mental condition of appellee. The court was of the opinion that the witness had not had enough personal contact with Ollie Ervin upon which to pass an opinion. If this were error, we *567 think it was harmless error for the reason that the defendant introduced a number of other witnesses bearing on the mental capacity of Ollie Ervin and if the testimony of Mrs. Chapman had been admitted and was favorable to appellant, it would also have been cumulative. Neither was it shown by the record what her evidence would be.
The next assignment is that the court erred in overruling the objections made to the testimony of Dr. -E. D. Reynolds and Dr. Floyd E. Lagerson on the ground that their opinion as to the mental condition of Ollie Ervin was retrospective from their examination rather than prospective. Dr. E. D. Reynolds was a general practitioner of medicine practicing in Mississippi since 1941. He saw Ollie Ervin on November 8, 1967, one month and ten days'after the signing of the instrument. He saw her again on December 9, 1967, and on March 8, 1968. The doctor testified that her history was that she became dizzy on the morning of the afternoon he saw her, and fell out and became unconscious. Upon examination, he found high blood pressure and that she was confused, not orientated as to time or place and she was badly swollen due to cardiac decompensation or to the arteriosclerosis, which was generalized over her body, and her heart was beating real fast irregularly. He testified as to what arteriosclerosis was, and among other things, that there was less blood supply, especially to your heart and your brain, and this brings on symptoms of heart failure and mental deterioration. He further testified that this was a slow progressive type of affliction which progressed usually for years. The doctor testified that from his examination and treatment, he was able to and did form an opinion that on September 25, 1967, she was not mentally capable of handling her business affairs. He testified, that in his opinion, she was not able to handle her business affairs due to her physical condition and mental deterioration.
He was asked on cross-examination what she told him, and. his answer was that she did not tell him much at all because she was unable to. The history he took was from the people who brought her. He testified that when he saw her in December, he thought she had made some progress, but, in March 1968, she had deteriorated even more. He further said that he was qualified as a medical doctor to say whether or not she was insane. He was asked what was her type of mental condition, and his answer was, “I would say depressive.”
Dr. Floyd E. Lagerson was also a doctor of medicine living at Jackson, Mississippi, having been licensed to practice in Mississippi for twenty-one years. He saw Ollie Ervin on May 3, 1968; May 7 and 8, and June 7, 1968. The doctor said that on his initial examination she was debilitated, weak, not well oriented, and that she was, in fact, too weak to weigh. Further, that they were unable to get a urine specimen because of her weakness, inability to make a specimen; that her hematology report showed her to have a hyperchromic macrocytic type of anemia. The serology was nonreactive. He gave the patient a test to evaluate mental impairment in the aged. This test had been used for twenty years for patients examined at the Hinds County Board of Public Welfare, Social Security, V. A. Hospital, and countless insurance companies. He said that in a patient seventy-seven years of age, a generalized actual sclerosis exists, and from a psychopathological standpoint the brain is affected before the rest of the body; that is the cerebrum, the cerebellum, and the cerebral cortex. He gave his diagnosis as generalized artherosclerosis with marked intelligence deficit, brain syndrome moderate to severe, and senile dementia. He testified that atherosclerosis and arteriosclerosis are gradual, progressive degenerative, arid deteriorating diseases over a period of years. The doctor said that he did form an opinion as to her mental capacity on September 25, 1967, and as for this opinion, he said:
In view of the present state of this patient’s health after seeing her on four *568 occasions in ’68 and examining her, my conclusion would be, based on over twenty years of examining patients, that the condition that exists today in point of time would certainly be the same condition that existed on September the prior year.
He further said that she was not mentally competent to manage her business affairs on that date.
Appellant argues that this evidence was inadmissible under the first paragraph of 29 Am.Jur.2d Evidence section 245, pages 292-93 (1967) which reads:
The presumption or inference of the continued existence of a condition or state of facts is generally considered to be prospective, and not retrospective. It has frequently been said that such a presumption never runs backward, the law not presuming, from proof of the existence of present conditions or facts, that the pame facts or conditions had existed of continued for any length of time previously. Thus, the presumption of continuing insanity runs from the date of its establishment and does not run backward; it is prospective and not retrospective, and proof of insanity at a particular time is not competent to prove, on the principle of natural and probable relation, the same condition a considerable period prior thereto.
However, we call attention to the second paragraph of said section, which reads as follows:
There is other authority, however, to the effect that presumptions can run backward, and that a presumption or an inference, as to the past existence of a condition or state of facts may be proper under some circumstances. The interval of time to which any such retrospective presumption or inference will be allowable depends on the nature of the thing and the circumstances of the particular case. With regard to the admissibility of evidence, it is held that when the condition of property at a particular time is in issue, evidence of the condition of that property at a time subsequent to the time in question is relevant and admissible, provided that such evidence relates directly to the issue in question and is not too remote in point of time.
These witnesses were physicians admitted to practice in the State of Mississippi and having practiced for a number of years. One saw the patient as heretofore stated, one month and ten days after the execution of the instrument, and the other saw her several months after-wards. Their testimony is that the condition in which they found the patient was one which required years to develop and that because of this fact, they were of the opinion that she had this mental deterioration at the time of the execution of the contract.
Under these particular circumstances, we hold that the opinion of these men of science was admissible for consideration by the court.
We find that the court was justified under the appellee’s evidence in finding as it did, and we cannot say the court was manifestly wrong in cancelling the aforesaid instrument and dismissing the cross-bill. The case is therefore affirmed.
Affirmed.
ETHRIDGE, C. J., and BRADY, INZER, and ROBERTSON, JJ., concur.